**SCHWARZKOPF DEVELOPMENT CORPORATION,**
Plaintiff-Appellee,

v.

**TI–COATING, INC.,**
Defendant-Appellant.

Appeal No. 86–788.

United States Court of Appeals,
Federal Circuit.

Aug. 20, 1986.

Joseph R. Papp, Harness, Dickey and Pierce, Birmingham, Mich., for appellant.

David H. Pfeffer, Morgan, Finnegan, Pine, Foley & Lee, New York City, for appellee.

Before NEWMAN, BISSELL, and ARCHER, Circuit Judges.

## ON MOTION TO DISMISS OR TRANSFER

PAULINE NEWMAN, Circuit Judge.

### ORDER

Appellee Schwarzkopf Development Corporation (SDC) moves to dismiss or transfer this appeal under 28 U.S.C. § 1631 for lack of appellate jurisdiction in the Federal Circuit.

The complaint raised claims in contract and (as amended) contract-related tort. The action was initiated by SDC in state court and, before Ti-Coating's answer was filed, was transferred to federal court on diversity grounds. The answer filed in federal court contained patent-related defenses and a counterclaim that included patent counts. The counterclaim was dismissed in its entirety, without objection by the counterclaimant, before the filing of an answer thereto. On this procedural history, the motion to transfer is granted.

### Background

Portions of the factual and procedural background of this litigation are pertinent to our decision on jurisdiction. SDC is the owner of U.S. Patent No. 4,101,703 ("the

'703 patent") and U.S. Patent No. 4,162,338 ("the '338 patent"), both directed to "Coated Cemented Carbide Elements". In November or December 1982 SDC and Ti-Coating entered into a written agreement, effective as of June 1, 1982, wherein SDC granted Ti-Coating a nonexclusive license to practice the inventions claimed in the SDC patents. The agreement released Ti-Coating from liability for past infringement and provided for the payment of royalties for operations after June 1, 1982.

The patented inventions relate to a multi-layered titanium-containing coating applied to cutting tools to increase their durability. Before November 1982 Ti-Coating had applied the patented coating directly to the surface of its tools. In November 1982 Ti-Coating assertedly changed its product by interposing an additional layer, ½ to 1 micron in thickness, of titanium nitride between the multi-layered coating and the tool surface. Ti-Coating paid no royalties for the periods before and after this change.

On November 14, 1983 SDC filed suit in New York state court for royalties due under the license agreement. Ti-Coating, a Michigan corporation, moved on December 13, 1983 to remove the suit pursuant to 28 U.S.C. § 1441 to the U.S. District Court for the Southern District of New York, alleging diversity jurisdiction under 28 U.S.C. § 1332. That motion was granted.

The action in the Southern District of New York was stayed, pending resolution of an earlier-filed action by Ti-Coating in Michigan arising out of the same transaction. The action had been filed in Michigan state court for reformation of the license agreement, and had been removed, because of diversity, to federal court in Michigan on SDC's motion. Although Ti-Coating's Michigan complaint was subsequently amended in the federal court to include counts for declaratory judgment that the '703 and '338 patents were invalid, unenforceable, and not infringed, these and all other aspects of the Michigan action were dismissed. Ti-Coating's appeal to the Sixth Circuit was dismissed for lack of prosecution.

On June 12, 1984, after the dismissal of Ti-Coating's Michigan action, the Southern District of New York reactivated this action. On July 23, 1984 Ti-Coating filed an answer and counterclaim. Ti-Coating admitted that it had at one time practiced the patented inventions but denied doing so after November 1, 1982. Ti-Coating's answer raised nine defenses, including the defenses of patent invalidity, unenforceability, misuse, and noninfringement. Ti-Coating's counterclaim contained five counts: Count I, for which jurisdiction was based on 28 U.S.C. §§ 1338, 2201, and 2202, sought a declaratory judgment that the licensed patents were invalid, unenforceable, and not infringed; Count II alleged Sherman and Clayton Act violations; Count III, based on 28 U.S.C. §§ 1338 and 2202, sought a declaratory judgment that SDC had misused the licensed patents which were therefore unenforceable; Count IV asked for rescission of the license agreement; and Count V asked for its reformation.

All five counts of the counterclaim were dismissed on SDC's motion, without opposition by Ti-Coating. On August 31, 1984, SDC had moved under Fed.R.Civ.P. 12(b)(1) to dismiss Counts I and III for lack of justiciable controversy under the Declaratory Judgment Act, and as *res judicata* because the same counts had been dismissed in the Michigan action on the same grounds. SDC moved under Fed.R.Civ.P. 12(b)(6) to dismiss Counts II and V for failure to state a claim for which relief could be granted, and as *res judicata*. Ti-Coating filed no opposition, and on October 4, 1984 the district court dismissed Counts I, II, III, and V of the counterclaim.

SDC filed a separate motion to dismiss Count IV and for partial summary judgment as to Ti-Coating's liability for royalties accrued between June 1, 1982 and November 1, 1982. Ti-Coating did not oppose, and this motion was granted on October 9, 1984.

SDC's motion to dismiss counterclaim Counts I, II, III, and V included a request for costs and attorney fees incident to the motion, on the ground that "there was no reasonable basis for the belief that these counts could properly be interposed in this action". Ti-Coating opposed this request, and on December 3, 1984 the district court denied attorney fees, stating that SDC had not clearly demonstrated that Ti-Coating's counterclaim was "entirely without color and ... asserted wantonly, for purposes of harassment or delay, or for other improper reasons".

On December 10, 1984 SDC moved for a second partial summary judgment of royalty liability, based on Ti-Coating's products sold between November 1, 1982 and September 30, 1983. On January 29, 1985 the court conditionally granted this motion, observing that Ti-Coating had offered no evidentiary support for its defense that it did not infringe SDC's patents. The court also granted SDC leave to file an amended complaint introducing a count for fraudulent inducement to enter into the license agreement.

On May 30, 1985 SDC moved for partial summary judgment for damages based on the conditional holding of January 29, 1985. SDC countered Ti-Coating's defense of patent invalidity on the basis that Ti-Coating "had failed to give prior notice of invalidity to Plaintiff and hence the defense of invalidity could not be raised for royalties due prior to the time of notice", which was October 30, 1983.

On July 9, 1985 the district court filed a written opinion on the merits. The court analyzed and interpreted the patent claims in view of the asserted changes to the Ti-Coating product. The court discussed the evidence presented on the defense of noninfringement, and applied the process claims and the product claims to the accused processes and structures. The court also reviewed a Patent and Trademark Office decision of February 27, 1985 denying reexamination, observing that "Claims 3 through 6 of patent '703 were interpreted by the PTO and the petition was denied",

and discussed why "this Court will not follow the P.T.O.'s interpretation" of the claims. The district court found that Ti-Coating literally infringed claim 15 of the '703 patent and claim 21 of the '338 patent. Ti-Coating was held liable under the contract. (Neither party had cancelled the contract).

The district court referred the matter to a magistrate for an accounting. The magistrate recommended that SDC be awarded damages of $64,781.13 for the period between June 1, 1982 to November 1, 1982, and $140,700.80 for the period between November 1, 1982 to September 30, 1983. Those amounts would have been payable as royalties under the contract.

On September 26, 1985 the court entered final judgment on the award of $64,781.13. That judgment has been satisfied, and Ti-Coating's liability for that period is not further contested.

On December 5, 1985 the court entered final judgment awarding SDC $140,700.80, pursuant to Fed.R.Civ.P. 54(b). On the same day the court granted, on consent, SDC's earlier motion for leave to file a supplemental complaint seeking damages based on Ti-Coating's failure to pay royalties for its operations between October 1, 1983 and September 30, 1985, and allowed Ti-Coating to file an answer.

On December 19, 1985 Ti-Coating filed a notice of appeal to this court from the judgment awarding $140,700.80. A "protective" appeal to the Second Circuit was also filed, and we have been advised that it has been stayed by the Second Circuit pending our determination of appellate jurisdiction.

On January 21, 1986, after this appeal was filed, Ti-Coating filed its answer in the district court to SDC's supplemental complaint. That answer includes counterclaim counts for declaratory judgment of patent invalidity, unenforceability, and noninfringement.

SDC asserts that because the case does not arise under the patent law, the jurisdiction of the district court was not based on

28 U.S.C. § 1338, and therefore that the Federal Circuit does not have jurisdiction under 28 U.S.C. § 1295(a)(1). Ti-Coating, opposing SDC's motion to dismiss or transfer, asserts that § 1338 jurisdiction is based on the patent counts of its counterclaim, and thus that the appeal of all aspects of the case lies with the Federal Circuit.

*Analysis*

I.

28 U.S.C. § 1295(a)(1) assigns to the Federal Circuit exclusive jurisdiction

of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title....

Section 1338 of Title 28 states in relevant part:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyright and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

The issue is whether the case on appeal "arose" in the district court, in whole or in part, under an "Act of Congress relating to patents". The seemingly simple phrase "arising under" has engendered interpretation for at least a century.[1] Congress anticipated that it might also be necessary to interpret this court's jurisdictional mandate, as circumstances arose. The House Report on the Federal Courts Improvement Act of 1982 states:

Should questions legitimately arise respecting ... the direction of appeals in particular cases, the Committee expects the courts to establish, as they have in similar situations, jurisdictional guidelines respecting such cases.

H.R.Rep. No. 12, 97th Cong., 1st Sess. 41 (1981) ("House Report"). We and other courts have done so, as required. *Compare Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 225 USPQ 121 (Fed.Cir.1985) (jurisdiction in Federal Circuit); *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 223 USPQ 1074 (Fed.Cir.1984) (jurisdiction in Federal Circuit); *Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 222 USPQ 738 (Fed.Cir.1984) (jurisdiction in Federal Circuit) *with Beghin-Say International Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir.1984) (jurisdiction denied); *Gilson v. Republic of Ireland*, 787 F.2d 655, 229 USPQ 460 (D.C.Cir.1986) (jurisdiction in D.C. Circuit); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 223 USPQ 214 (9th Cir.1984) (jurisdiction in Ninth Circuit), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985). The variety of procedural and substantive situations that occasioned those decisions required analysis not only of the words of the statute, but also of the intention of our congressional creators. This body of jurisprudence is now sufficiently evolved that we need not repeat its genesis; a few highlights will explain its application to this case.

In *Atari*, 747 F.2d at 1436, 223 USPQ at 1084, this court implemented Congress' concern that appellate jurisdiction be determined "at the complaint stage of the district court proceeding". This principle is of classical solidity with respect to determinations of original jurisdiction. For example, in *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913), the Supreme Court stated:

[T]he party who brings a suit is master to decide what law he will rely upon and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill. That question cannot

---

**1.** "Arising under" jurisdiction first appeared in the Act of March 3, 1875, 18 Stat. 470, the act that established a scope of federal question jurisdiction similar to that which exists today. As discussed in H. Shulman & E. Jaegerman, *Some*

*Jurisdictional Limitations on Federal Procedure,* 45 Yale L.J. 393, 393 (1936), the distribution of judicial powers between federal and state courts was historically "politically ... explosive".

depend upon the answer, and accordingly jurisdiction cannot be conferred by the defence even when anticipated and replied to in the bill.

*See also Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915) ("Jurisdiction generally depends upon the case made and relief demanded by the plaintiff, and as it cannot be helped, so it cannot be defeated by the replication to an actual or anticipated defence contained in what used to be the charging part of the bill.").

The complaint in the case at bar is for failure to pay royalties due under an existing patent license agreement. Such a suit has consistently been viewed as one arising out of state contract law, not "arising under" the patent law. As observed by the Supreme Court in *Luckett v. Delpark, Inc.,* 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926):

> It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent is not a suit under the patent laws of the United States, and can not be maintained in a federal court as such.

*See also Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897); *Wilson v. Sandford,* 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850); *Beghin-Say International,* 733 F.2d at 1570–71, 221 USPQ at 1123.

Equally long-standing authority has held that raising patent-related defenses in the answer to a complaint does not create the "arising under" jurisdiction provided the district courts in § 1338, although these defenses may require application of the federal patent law. *See, e.g., American Well Works Co. v. Layne and Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action."); *The Fair, supra.* In *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 879, 219 USPQ 197, 201 (Fed.Cir.1983), this court stated "[i]t is well-settled that a case cannot 'arise under' federal law where the [patent] claim is merely a defense to a state court action." The fundamental nature of the action is not changed when it enters the federal system on the sole basis of diversity.

Having reached the federal system based on diversity, the case before us then became subject to patent counts of a counterclaim, that could not have been filed in the state court. A counterclaim, with its own jurisdictional predicate, normally generates its own responsive pleadings, and may remain in the suit even if the complaint is dismissed. Fed.R.Civ.P. 41(a)(2).

Adjudication of a patent counterclaim is the exclusive province of the federal courts. The patent counts of Ti-Coating's counterclaim, for declaratory judgment of patent invalidity, noninfringement, and unenforceability, are within the jurisdiction of the district court under § 1338. Under 28 U.S.C. § 1295(a)(1), when the district court's jurisdiction is based in part on § 1338, the appeal of the entire case, not solely the patent claims, lies in this court. Thus appellate jurisdiction over suits involving a § 1338 counterclaim is assigned to the Federal Circuit. However, this jurisdictional consequence requires something more than the mere filing, followed by the unopposed dismissal, of a counterclaim.

## II.

When a § 1338 counterclaim is relied upon to establish appellate jurisdiction, it is subject to the same scrutiny as any other jurisdiction-controlling factor. The House and Senate Reports make clear that

> immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court, and therefore will not create jurisdiction in the appellate court.

House Report at 41. *See also* S.Rep. No. 275, 97th Cong., 1st Sess. 19 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 29 ("Senate Report"). The Senate expressed the concern that our jurisdiction not be manipulated "to create forum shopping opportunities between the Feder-

al Circuit and the regional courts of appeals on other claims", the Senate focusing on antitrust issues as an example:

> Thus, for example, mere joinder of a patent claim in a case whose gravamen is antitrust should not be permitted to avail a plaintiff of the jurisdiction of the Federal Circuit.... Federal District judges are encouraged to use their authority under the Federal Rules of Civil Procedure ... to ensure the integrity of the jurisdiction of the federal court of appeals by separating final decisions on claims involving substantial antitrust issues from trivial patent ... counterclaims ... raised to manipulate appellate jurisdiction.

Senate Report at 19–20, 1982 U.S.Code Cong. & Ad.News at 29–30. The Senate Report continued:

> The Committee intends for the jurisdictional language to be construed in accordance with the objectives of the Act and these concerns. If, for example, a patent claim is manipulatively joined to an antitrust action but severed and dismissed before final decision of the antitrust claim, jurisdiction over the appeal of the antitrust claim should not be changed by this Act but should rest with the regional court of appeals.

*Id.* at 20, 1982 U.S.Code Cong. & Ad.News at 30.

■ Ti-Coating asserts that its dismissed counterclaim was *bona fide* for purposes of determining our appellate jurisdiction, observing that the trial court refused to impose sanctions under Fed.R.Civ.P. 11 based on the absence of "clear evidence" that the counterclaim was made in bad faith. In this case, however, we need not decide whether the pleading of the patent counts of the counterclaim was *bona fide*, or whether the counts themselves were trivial or substantial.[2] Ti-Coating's entire coun-

terclaim was dismissed during the pleading stage. Since no objection was interposed by Ti-Coating, that dismissal was final and not appealable. Whatever the merits of its dismissal, the transient appearance of the counterclaim did not give it irrevocable control of the jurisdictional basis of the case. When the counterclaim including the § 1338 counts was dismissed on the pleadings, without opposition by the counterclaimant, it left no legacy on which to base appellate jurisdiction in this court.[3] *Accord Handgards,* 743 F.2d at 1285–88, 223 USPQ at 215–17 (where patent declaratory judgment claim was dismissed and not appealed in an earlier appeal, the Ninth Circuit retained jurisdiction over a subsequent antitrust appeal); *cf. USM Corp. v. SPS Technologies, Inc.,* 770 F.2d 1035, 1037, 226 USPQ 1038, 1039–40 (Fed.Cir.1985) (where the patent issues were decided and thus disposed of by the Seventh Circuit prior to the creation of this court, we declined jurisdiction over a subsequent appeal of the remaining antitrust issue). Thus, the contract case on appeal, that reached federal district court solely on the basis of diversity, has not acquired a basis for jurisdiction arising in whole or in part under an Act of Congress relating to patents.

Accordingly, SDC's motion to transfer the appeal is *granted.* 28 U.S.C. § 1631.

IT IS SO ORDERED.

---

2. Nor need we here consider such issues as compulsory versus permissive counterclaims, their relation to the defenses, or other questions raised by scholars as possibly affecting appellate jurisdiction.

3. This result is unaffected by the further counterclaim pleaded in response to a further amended complaint; those subsequent procedures, after this appeal was filed, can not impart retroactive substance to the prior judgment here on appeal.