XETA, INC., Plaintiff–Appellant,

v.

ATEX, INC. and Eastman Kodak Company, Defendants–Appellees.

Appeal No. 87–1514.

United States Court of Appeals, Federal Circuit.

July 27, 1988.

Elizabeth T. Luster, Sheehan, Phinney, Bass & Green, Manchester, N.H., argued for plaintiff-appellant. With her on the brief was Thomas H. Richards.

Timothy J. Dacey, Hill & Barlow, Boston, Mass., argued for defendants-appellees. With him on the brief were Gael Mahony, Barbara F. Berenson and Patrick J. Feeley. Also on the brief were Thomas C. O'Konski

and Stephen Y. Chow, Cesari and McKenna, Boston, Mass.

Before MARKEY, Chief Judge, FRIEDMAN, SMITH, NEWMAN, and MAYER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Xeta, Inc. appeals the decision of the United States District Court for the District of New Hampshire,[1] denying Xeta's motion to enjoin Atex, Inc. and its parent Eastman Kodak Company, *pendente lite*, from conducting certain activities asserted to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 3 of the Clayton Act, 15 U.S.C. § 14; Section 2(a) of the Clayton Act as amended by the Robinson–Patman Act, 15 U.S.C. § 13(a); and New Hampshire laws R.S.A. 356:2 and 358–A:2; and certain actions asserted to be in tortious interference with Xeta's contractual relations, business relations, and prospective advantage, in violation of New Hampshire state law.

### Jurisdiction

This appeal reaches us by transfer from the First Circuit Court of Appeals [2] in accordance with 28 U.S.C. § 1631, that court having determined that jurisdiction lies with the Federal Circuit because Atex by counterclaim charged Xeta with infringement of United States Patent No. 3,980,-994. Although the issue of jurisdiction was not raised in Xeta's brief, its counsel at oral argument maintained the position that this court lacks jurisdiction to hear this appeal because there was no patent claim pled by the plaintiff, and the patent infringement counterclaim has not been acted on or appealed.

The matter was settled in *Christianson v. Colt Industries Operating Corp.*, (—— U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), wherein the Court held that the jurisdictional decision of the transferor court is the law of the case. Jurisdiction is properly with the Federal Circuit.

---

1. *Xeta, Inc. v. Atex, Inc.*, No. C87–16–L (D. N.H. February 9, 1987).

2. *Xeta, Inc. v. Atex, Inc.*, 825 F.2d 604, 3 USPQ2d 1590 (1st Cir.1987), *reconsideration denied*, No. 87–1282 (1st Cir. Nov. 5, 1987).

*The Products*

Atex has since 1974 manufactured and sold text-processing computer systems for use by newspapers, magazines, and other businesses such as law firms that publish large amounts of text. The systems are designed to meet the customer's particular requirements, and comprise Atex proprietary software, a central processing minicomputer unit, disc drives, terminals (which consist of video display units and keyboards), and an output device such as a printer or typesetter. Atex warrants its systems and provides technical and debugging services to its customers.

Xeta produces and sells terminals (video display units and keyboards) that are designed to be used with or as a substitute for Atex terminals in the Atex systems. Xeta's introduction of these terminals in 1985 stimulated the commercial responses from Atex that are the subject of this action.

*The Preliminary Injunction*

The district court denied Xeta's motion for injunction *pendente lite*. The sole issue is whether this denial was an abuse of the district court's discretionary authority.

When the questions on appeal involve law and precedent on subject matter not exclusively assigned to the Federal Circuit, we apply the discernible law that would be applied by the regional circuit. *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439–40, 223 USPQ 1074, 1087 (Fed.Cir. 1984). Thus we look to the laws of the First Circuit and the state of New Hampshire, in reviewing the district court's denial of the requested preliminary relief.

The First Circuit in *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 276–77 (1st Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982), discussed the requirements for grant of relief *pendente lite* in antitrust actions: as in other causes of action, the plaintiff must show that there is no adequate remedy at law, that the plaintiff will suffer irreparable injury absent the requested injunction, that such irreparable injury outweighs the harm an injunction would inflict on the defendant, that the plaintiff has shown a likelihood of success on the merits, and that the public interest will not be adversely affected by the grant of the requested injunction.

The First Circuit, remarking on the overarching requirement that the moving party must show a likelihood of success on the merits, stated that "the probability-of-success component has loomed large in cases before this court". *Id.* at 277 (citing *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009–1022 (1st Cir.1981)). The criticality of this requirement has been reaffirmed. *See Lancor v. Lebanon Housing Authority*, 760 F.2d 361, 362 (1st Cir.1985) ("the probability-of-success component in the past has been regarded by us as critical in determining the propriety of injunctive relief").

The grant or denial of a preliminary injunction is within the sound discretion of the district court, *Planned Parenthood League*, 641 F.2d at 1009, and may be reversed by an appellate tribunal if the district court has committed an abuse of discretion, if the decision is based on an error of law, or if the court has misapplied the law to particular facts. *Id.* (citing *Charles v. Carey*, 627 F.2d 772, 776 (7th Cir.1980)); *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 751 (1st Cir.1983); *see also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2962, at 633 (1973); *accord H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987). On these bases we review the district court's denial of the preliminary injunction.

I

The principal antitrust claim asserted by Xeta is that Atex imposed on its customers an illegal tying arrangement, in violation of Section 1 of the Sherman Act, Section 3 of the Clayton Act, and corresponding New Hampshire law N.H. R.S.A. 356:2.

■ To show an illegal tie three elements must be demonstrated: first, the purchase of one product (the tying product) must be conditioned on the purchase of

another product (the tied product); second, the defendant must have "sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product"; and third, the amount of commerce affected must be "not insubstantial". *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *see also Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 11–18, 104 S.Ct. 1551, 1558–61, 80 L.Ed.2d 2 (1984); *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 498–99, 89 S.Ct. 1252, 1256–57, 22 L.Ed.2d 495 (1969).

■ Xeta states that Atex conditions the sale of its proprietary software on the customer's purchase of Atex hardware, and enforces this tie with its announced disclaimer of warranty and technical service obligations when Atex components are used in "foreign" systems. Xeta also states that Atex made illegal and prejudicial changes in its pricing practices in response to Xeta's entry: specifically, the imposition of a software license fee. According to Xeta, this fee is charged to Xeta's customers but not to Atex's customers, and implements the tie between Atex software and hardware.

Atex responds that its system consists of interrelated components designed to be used as an integrated system for the specialized purpose of text processing, that the major components are not interchangeable with those of other systems, and that neither the software nor the specialized hardware has an independent market. Atex states that its warranty practice is common in the computer industry and is not a tool of coercion, and in any event that it has never withheld warranty services of its components in such circumstances.

Atex states that the software license fee is charged to all, and that it had merely "unbundled" the fee which, until 1986, had not been separately charged. Atex states that the license fee has been contemplated in its Sales Agreements since 1982, well before the appearance of Xeta in this field. Atex argues that its separate fee for the software license actually emphasizes the absence of a coerced tie among components, since each aspect of the system carries its independent price. Xeta conceded at oral argument that the license fee of $1000 per terminal was not inordinately high in view of the total cost of these systems, ranging to millions of dollars.

Xeta did not show likelihood of success in proving the asserted tie. Xeta presented no evidence to show that Atex's warranty and servicing practices were unreasonable under the circumstances, and showed no illegality in the software licensing practice. Xeta did not support its allegation that the fee is not being charged to all, at least after the "grace period" described by Atex.

On the record before it, the district court did not abuse its discretion in declining to grant a preliminary injunction on these bases. The antitrust laws do not prohibit Atex from changing its sales and pricing practices, or from responding to competition. *See, e.g., Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 116, 107 S.Ct. 484, 492, 93 L.Ed.2d 427 (1986) ("the antitrust laws do not require the courts to protect small businesses from the loss of profits due to continued competition, but only against the loss of profits from practices forbidden by the antitrust laws").

## II

The district court focussed primarily on the tying claim, which was the principal claim developed by Xeta. Xeta had raised additional issues and arguments, and asserts that the district court erred in failing to grant a preliminary injunction on these additional bases and in not making express findings of fact on all issues.

### A

■ We turn first to Xeta's assertion that it lost a sale to Lockheed and is experiencing serious commercial difficulties because Atex lowered its prices in response to Xeta's low prices.

Price competition is not itself an antitrust violation. Whether Atex's pricing policies show the requisite predatory intent

requires proof beyond that adduced by Xeta. *See Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir. 1983) (requiring consideration of the seller's incremental and average total cost); *Kartell v. Blue Shield of Massachusetts, Inc.*, 749 F.2d 922, 927–28 (1st Cir.1984), *cert. denied*, 471 U.S. 1029–30, 105 S.Ct. 2040, 2049, 85 L.Ed.2d 322 (1985). Xeta's charge in its complaint that Atex was selling below cost was contravened by Xeta's admission, on argument before the district court, that Atex was selling at a substantial markup.

The law that prohibits predatory pricing practices does not routinely bar a seller from lowering its prices to compete with a competitor's lower prices. *Falls City Industries, Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 445, 103 S.Ct. 1282, 1294, 75 L.Ed. 2d 174 (1983) ("A seller is permitted 'to retain a customer by realistically meeting in good faith the price offered to that customer, without necessarily changing the seller's price to its other customers'" (quoting *Standard Oil Co. v. F.T.C.*, 340 U.S. 231, 250, 71 S.Ct. 240, 250, 95 L.Ed. 239 (1951))).

Xeta also charges that Atex violated provisions of the Robinson–Patman Act, 15 U.S.C. § 13(a), and corresponding N.H. R.S.A. 358–A:2. Violation of the Robinson–Patman Act requires, inter alia, that the same commodity be sold to separate customers at different prices during the same time period. *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219 (1947) ("no single sale can violate the Robinson–Patman Act"). Xeta relies on Atex's reduced price negotiated with Lockheed as compared with Atex's higher list prices. Xeta showed no sale at a different price during this period, thus failing to show likelihood of success on the threshold burden of a Robinson–Patman violation.

**B**

Xeta states that Atex threatened it with legal action as to patent infringement and also with respect to Atex's assertion that William West, the founder and president of Xeta, misappropriated trade secrets learned while he was an employee of Atex. Xeta also asks that Atex be enjoined from threatening Xeta's customers. Atex responds that Xeta had engaged in commercial fraud, a separate matter the details of which we need not discuss, but which prompted the response about which Xeta complains. On this record of argument without development of factual support, we discern no abuse of the district court's discretion.

**C**

The premise of the New Hampshire state action for tortious interference with contractual relations is that the wrongdoer intentionally induced or otherwise caused a third party not to enter into or continue a business relation with the plaintiff. *See Baker v. Dennis Brown Realty, Inc.*, 121 N.H. 640, 433 A.2d 1271, 1274 (1981). Xeta offered as evidence the affidavit of Mrs. West, Xeta Vice President, that Xeta had an agreement with Lockheed, supported by a price quotation from Xeta to Lockheed. The record contains no acceptance by Lockheed, no purchase order, no exchange of correspondence, and no testimony from Lockheed. Atex testified that Lockheed requested reduced prices from Atex after Lockheed had Xeta's offer, but did not tell Atex the prices offered by Xeta.

We take note that customers are wont to negotiate for the most favorable terms, and that a potential customer is not barred from negotiating with more than one supplier. On this record Xeta has not shown a likelihood of success on the merits of these tort claims. *See Restatement of Torts (Second)* § 768(1) (1979) (no wrong if the action concerns proper competition between the parties).

**III**

The burden is on the requester of preliminary relief to show likelihood of success on the merits of its claim and, if this requirement is met, to show the other necessary elements of entitlement to an injunction. Although Xeta impugns Atex's motives, Xeta did not present evidence sufficient to support a ruling of likelihood of success on

these asserted violations of antitrust and tort law.

Xeta asserts that the damage to its business is so great that Atex should be enjoined even if likelihood of success has not been shown. Atex responds, inter alia, that Xeta's business has continued to grow. The district court did not discuss the relative harms, but the First Circuit teaches that absent a showing of likelihood of success an injunction *pendente lite* should not be granted. *San Francisco Real Estate Investors v. Real Estate Investment Trust of America*, 701 F.2d 1000, 1007 (1st Cir. 1983) ("Of course if [the movant's] case on the merits is not likely to succeed, we do not even reach the balancing of harms").

Xeta complains of the succinctness of the district court's opinion, and has pressed all the issues raised in the complaint. Some of these issues are at best sketchily supported, or presented solely on argument. The district court did not err in not making detailed findings on peripheral issues for which adequate foundation was not provided by the claimant. *See generally* 5A J. Moore, *Moore's Federal Practice* ¶ 52.07 (2d Ed.1987).

We discern no abuse of discretion in the district court's denial of Xeta's motion for preliminary injunction.

AFFIRMED.