**AEROJET–GENERAL CORP.,**
**Plaintiff–Appellant,**

v.

**MACHINE TOOL WORKS, OERLIKON–BUEHRLE LTD., Defendant–Appellee.**

**No. 88–1351.**

United States Court of Appeals,
Federal Circuit.

Feb. 1, 1990.

Andrew P. Vance, Thomas D. Rosenwein, William T. Bullinger, J. Gary McDavid and George E. Hutchinson, The Fed. Bar Ass'n, Washington, D.C., were on brief, amicus curiae, for The Fed. Circuit Bar Ass'n.

Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, Cal., was on brief, amicus curiae, for American Intellectual Property Law Ass'n.

Charles A. Wendel, Lyon & Lyon and Steven E. Lipman, Fish & Richardson, Washington, D.C., were on brief, amicus curiae, for Patent, Trademark and Copyright Law Section, The District of Columbia Bar.

Joseph R. Magnone, Eric H. Weisblatt and Teresa Stanek Rea, Burns, Doane, Swecker & Mathis, Alexandria, Va., were on brief, amicus curiae, for Bar Ass'n of District of Columbia, Patent, Trademark & Copyright Section.

Before MARKEY, Chief Judge, FRIEDMAN * and SMITH,** Senior Circuit Judges, and RICH, NIES, NEWMAN, ARCHER, MAYER and MICHEL, Circuit Judges.***

MARKEY, Chief Judge.

Aerojet–General Corporation (Aerojet) appealed from an order of the United States District Court for the Central District of California. *Aerojet–General Corp. v. Machine Tool Works, Oerlikon–Buehrle, Ltd.,* No. 87–0065 IH (C.D.Cal. Mar. 14, 1988). Having considered the matter *in banc,* we hold that this court has appellate subject matter jurisdiction.

## BACKGROUND

Robert A. Schroeder, Pretty, Schroeder, Brueggeman & Clark, Los Angeles, Cal., submitted, for plaintiff-appellant. With him on brief, was Edward G. Poplawski.

Jay R. Ziegler, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., submitted for defendant-appellee.

In January 1987, Aerojet sued Machine Tool Works and Oerlikon–Buehrle Ltd. (MTW) for unfair competition, interference with prospective advantage, false representation (15 U.S.C. § 1125(a) (1988)), and declaratory judgment that trade secrets were not misappropriated (28 U.S.C. § 2201

---

\* Judge Friedman assumed senior status on November 1, 1989.

\*\* Judge Smith assumed senior status on June 1, 1989.

\*\*\* *Judge Bissell did not participate in the decision.*

(1982)). Federal subject matter jurisdiction was predicated upon the presence of a federal question, 28 U.S.C. § 1331 (1982), and diversity of citizenship, 28 U.S.C. § 1332 (1982).[1]

On November 9, 1987, MTW answered and counterclaimed for breach of contract, unfair competition, trade secret misappropriation, false representation (15 U.S.C. § 1125(a)), and infringement of United States Patents No. 3,837,057 and No. 3,927,618 (35 U.S.C. § 271 (1982)). The parties agreed that MTW's counterclaims were compulsory. *See* Fed.R.Civ.P. 13(a). There is no suggestion that MTW's counterclaim for patent infringement is insubstantial, frivolous, or asserted to manipulate the jurisdiction of this court.

On March 14, 1988, the district court issued an order staying proceedings and ordering arbitration of all claims, including MTW's counterclaim for patent infringement. *See* 9 U.S.C. §§ 3, 4 (1988). Aerojet appealed, saying it did so under "28 U.S.C. §§ 1291 and 1295, or alternatively 28 U.S.C. § 1292."[2] MTW moved to dismiss,

arguing that the appeal was from a nonfinal order.

In a May 23, 1989 *in banc* ORDER, having determined *sua sponte* that this appeal raised a potential question of exceptional importance, we ordered briefing by the parties, and invited briefs *amicus curiae*,[3] on this question:

> In light of *Christianson v. Colt* [486 U.S. 800], 108 S.Ct. 2166 [100 L.Ed.2d 811] (1988), does this court have jurisdiction to hear an appeal in a case in which the district court's jurisdiction over the complaint was not based on § 1338(a) but there is a counterclaim over which the district court would have § 1338(a) jurisdiction if the counterclaim had been a complaint?

On October 5, 1989, 886 F.2d 1310, this court issued this ORDER:

> Having considered *in banc* the jurisdictional question set forth in this court's Order of May 23, 1989, the court has determined that it does have subject matter jurisdiction and that an opinion ex-

---

**1.** The *sole* basis for this suit, i.e. the sole *claim* set forth in Aerojet's complaint, is the allegation that MTW made knowingly false representations "that Aerojet's ammunition is based on trade secrets misappropriated from [MTW]." In its prayer for relief, Aerojet requested injunctions against such representations, against interference with Aerojet's sales of ammunition, against any other unfair competition, and damages, costs, and attorney fees, closing with a redundant request for a "declaration" that Aerojet's sales would constitute no misappropriation of MTW's trade secrets. No reference to patent invalidity, noninfringement, or unenforceability appears anywhere in Aerojet's complaint. The district court characterized the "dispute" as involving an Aerojet request for declaration of patent noninfringement, but that characterization was made on the basis of all the pleadings, including the counterclaim, and was not a characterization of the complaint itself.

If Aerojet's prayer for relief be seen as requiring that its complaint be treated as one for declaratory judgment that it is not misappropriating, the well-pleaded complaint rule would be applied to the action MTW would have brought. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 16, 103 S.Ct. 2841, 2849, 77 L.Ed.2d 420 (1983); *Speedco, Inc. v. Estes,* 853 F.2d 909, 912, 7 USPQ2d 1637, 1640 (Fed.Cir.1988). In the present case, MTW's action would have been one for misap-

propriation of its trade secrets under state law. Application of the well-pleaded complaint rule to MTW's complaint in such an action would, absent diversity, defeat federal jurisdiction. If (out of concern for collateral estoppel or otherwise) MTW elected to include in such complaint a claim of patent infringement, application of the well-pleaded complaint rule to that complaint would make the district court's jurisdiction in part under 28 U.S.C. § 1338 and the appeal would be directed to this court. Declining, however, an approach that would require assumptions, we treat the pleadings as written, i.e., as a complaint based on a claim of false representation and a counterclaim for, *inter alia,* patent infringement.

**2.** The grant of our jurisdiction over appeals from interlocutory orders is limited to cases over which we "would have jurisdiction of an appeal under section 1295." 28 U.S.C. § 1292(c)(1) (1982). To determine our appellate subject matter jurisdiction in respect of the present appeal, therefore, we must determine whether we would have that jurisdiction over an appeal from a final judgment in the underlying suit.

**3.** *Amicus curiae* briefs were filed by the Federal Circuit Bar Association, the American Intellectual Property Law Association, the District of Columbia Bar, and the Bar Association of the District of Columbia.

plaining the basis for that determination will issue in due course.

Accordingly, it is ORDERED:

(1) In view of settlement negotiations the joint motion to stay a decision on the merits and other jurisdictional issues is granted.

(2) The parties will notify the Clerk of the status of settlement negotiations on 1 November 1989, 1 December 1989, and, if necessary, 1 January 1990.

## OPINION

### Introduction

 This is the explanatory opinion promised in the October 5, 1989 ORDER. It deals only with cases in which a nonfrivolous compulsory counterclaim for patent infringement has been filed in an action originally and properly brought in a federal district court and with the court to which appeals in such cases should be directed. Thus our holding can have no effect upon the established principles governing removal of actions from state to federal courts.[4] We also leave for another day and a proper case the question of whether our present holding might be the same in respect of a permissive counterclaim. Similarly, we say nothing about the finality of the order appealed from, a matter subject to review by a panel of this court if the settlement nego-

tiations referred to in the ORDER of October 5, 1989 should fail.[5]

Congress anticipated the need for interpretation of our jurisdictional mandate: "[s]hould questions legitimately arise respecting ancillary and pendent claims and for the direction of appeals in particular cases, the Committee expects the courts to establish, as they have in similar situations, jurisdictional guidelines respecting such cases." H.R.Rep. No. 312, 97th Cong., 1st Sess. 41 (1981) [hereinafter House Report]; *see also* S.Rep. No. 275, 97th Cong., 1st Sess. 19–20 (1981) U.S.Code Cong. & Admin.News 1982, p. 11 [hereinafter Senate Report]. Congress further indicated that our jurisdiction under section 1295 should be construed in accord with the objectives of the Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25 [hereinafter FCIA]. Senate Report at 20. Though the present case involves not an "ancillary" or "pendent" claim but a nonfrivolous claim having its own jurisdictional basis under section 1338, we establish in this appeal one of the guidelines expected by Congress and we do so in accord with congressional objectives.

### Pre–Christianson Statements

Before *Christianson,* this court indicated in *dicta* that it would have appellate sub-

4. It has been held that the filing in a state court of a counterclaim for patent infringement will not alone support removal to federal court. *Rath Packing Co. v. Becker,* 530 F.2d 1295, 1303 (9th Cir.1975) (Rich, J., sitting by designation), *aff'd on other grounds sub nom., Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). As appears in the text, *infra,* it is not necessary to consider that circumstances here, the case being already properly in a federal court.

5. That we have appellate subject matter jurisdiction to entertain the appeal from the interlocutory order means not that the order is final but that the appeal is properly here for us to decide whether it is or is not final, and (if the former) to decide it and (if the latter) to dismiss it. Lack of finality is a defect in an order, having no effect on or relation to our appellate subject matter jurisdiction but precluding its *exercise* in deciding the merits of the order. That is what "finality is jurisdictional" means. Lack of appellate subject matter jurisdiction is a defect in our authority to act at all, requiring dismissal or

transfer of the appeal without deciding whether the order is final or nonfinal. See the discussion of "jurisdiction" in *Rhone Poulenc, Inc. v. United States,* 880 F.2d 401 (Fed.Cir.1989). The statute, 28 U.S.C. § 1295(a), mandates that we decide nonfrivolous issues of whether we have appellate subject matter jurisdiction over the appeal, however difficult those issues may prove to be. To do otherwise is to risk our appearing to "appropriate" jurisdiction to act in an appeal that should, under the statute, have been brought in a regional circuit. *See* H.R.Rep. No. 312, 97th Cong., 1st Sess. 40–41 (1981). Similarly, a regional circuit court may be expected to determine first whether it has subject matter jurisdiction before acting in an appeal that should, under the statute, have been brought in this court. That is not to say that this or a regional circuit court may not dismiss as untimely any appeal clearly brought beyond the statutory 30–day time limit. Such an appeal would be untimely in all courts. Hence its transfer would be wasteful and its dismissal would not involve a decision on internal appealability questions such as finality or mootness.

ject matter jurisdiction over a case when, because of the presence of a nonfrivolous, compulsory patent law counterclaim, the district court's jurisdiction was based in part on section 1338.

In *Schwartzkopf Development Corp. v. Ti–Coating Inc.*, 800 F.2d 240, 231 USPQ 47 (Fed.Cir.1986), we transferred an appeal for lack of jurisdiction. In that case, a patent law counterclaim was merely transient, having been withdrawn by the counterclaimant at the pleading stage and before a responsive pleading was filed. However, we went on to indicate that we would have had appellate jurisdiction over the case if the counterclaim had not been dismissed:

> Having reached the federal system based on diversity, the case before us then became subject to patent counts of a counterclaim, that could not have been filed in the state court. A counterclaim, with its own jurisdictional predicate, normally generates its own responsive pleadings, and may remain in the suit even if the complaint is dismissed. Fed. R.Civ.P. 41(a)(2).

> Adjudication of a patent counterclaim is in the exclusive province of the federal courts. The patent counts of [the defendant's] counterclaim, for declaratory judgment of patent invalidity, noninfringement, and unenforceability, are within the jurisdiction of the district court under § 1338. Under 28 U.S.C. § 1295(a)(1), when the district court's jurisdiction is based in part on § 1338, the appeal of the entire case, not solely the patent claims, lies in this court. Thus appellate jurisdiction over suits involving a § 1338 counterclaim is assigned to the Federal Circuit. However, this jurisdictional consequence requires something more than the mere filing, followed by the unopposed dismissal, of a counterclaim.

*Id.* at 244, 231 USPQ at 50.

In *In re Innotron Diagnostics*, 800 F.2d 1077, 231 USPQ 178 (Fed.Cir.1986) we exercised our appellate subject matter jurisdiction to consider a petition for mandamus. In that case, an antitrust action had been consolidated with a patent infringement action. Saying consolidation "in no way ousted the district court of jurisdiction over [the patent infringement] complaint under § 1338(a)", *id.* at 1080, 231 USPQ at 180, we went on to note an analogy with a counterclaim:

> The district court's consolidation of the cases produced the same status as that which would have [been] obtained if [the defendant] had filed its patent claim as a counterclaim.... It would, of course, be incongruous to hold that consolidation of a separate suit ... is distinct, in relation to this court's jurisdiction, from the presence of a counterclaim raising the same allegations of patent infringement that are not "immaterial, inferential, [or] frivolous," or a "mere joinder." [Senate Report at 20].

> Thus, whether allegations of patent infringement be filed and maintained as a viable, non-frivolous counterclaim in a non-patent case, or as a separate complaint which is then consolidated with the non-patent case, the district court's jurisdiction is based "in part" on § 1338(a) and this court must exercise its exclusive appellate jurisdiction over the entire case. 28 U.S.C. § 1295(a)(1).

> Thus the mere labeling and sequencing of pleadings in the trial tribunal cannot be allowed to control every exercise of this court's appellate jurisdiction.

*Id.*

Finally, in *Xeta, Inc. v. Atex, Inc.*, 825 F.2d 604, 3 USPQ2d 1590 (1st Cir.1987), the Court of Appeals for the First Circuit, citing *Schwartzkopf* and *Innotron*, transferred to this court an appeal from a denial of a preliminary injunction against antitrust violations and unfair trade practices, reasoning that the district court's jurisdiction had been based in part on section 1338 where "the defendant included a viable [and legitimate] patent [infringement] counterclaim." *Id.* at 608, 3 USPQ2d at 1593. This court did not discuss its jurisdiction because "the jurisdictional decision of the transferor court is the law of the case." *Xeta, Inc. v. Atex, Inc.*, 852 F.2d 1280, 1281, 7 USPQ2d 1471, 1472 (Fed.Cir.

1988) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 2177–78, 7 USPQ2d 1109, 1116–17, 100 L.Ed.2d 811 (1988)).

Our holding here accords with the statements in *Schwartzkopf* and *Innotron* respecting the role of a nonfrivolous compulsory counterclaim for patent infringement in setting the section 1338 jurisdiction of the district court and hence the section 1295 jurisdiction of this court.

### Christianson v. Colt

In *Christianson,* the Supreme Court considered conflicting views on whether the mere presence of patent law issues means that this court has jurisdiction to hear the appeal. This court had concluded that it did not, *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1552–53, 3 USPQ2d 1241, 1246–47 (Fed.Cir.1987), and the Court reached the same conclusion. However, because the Court there dealt with the effect on our jurisdiction of patent law issues raised only as a defense and no patent *claims* appeared in the complaint or in any counterclaim, *Christianson* is clearly distinguishable on its facts from the case before us. Nonetheless, the Court's discussion indicated a need to clarify our jurisdiction under the distinct circumstance in which the patent laws constitute the basis of a nonfrivolous compulsory counterclaim. Hence this court issued its ORDER of May 23, 1989.

Noting that section 1295(a)(1) grants this court jurisdiction over "an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C. § ] 1338", 28 U.S.C. § 1295(a) (1982), and that section 1338(a) grants jurisdiction to district courts "of any civil action arising under any Act of Congress relating to patents", 28 U.S.C. § 1338(a) (1982), the Court indicated that this court's appellate jurisdiction "turns on" whether the action is one " 'arising under' a federal patent statute" and "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief

necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." 108 S.Ct. at 2173, 7 USPQ2d at 1113.

The Court's focus on the "well-pleaded complaint rule" was, of course, perfectly appropriate in *Christianson,* where there was no counterclaim arising under a federal patent statute. Indeed, this court had employed the same analysis when the case was here. 822 F.2d at 1553–56, 3 USPQ2d at 1247–50. We find no conflict, however, between a proper application of the well-pleaded complaint rule and our holding that this court has appellate jurisdiction when a nonfrivolous well-pleaded compulsory patent law counterclaim is present in a case originally and properly filed in the district court.

It is apparent from their unanimous opinion that the Justices did not intend to make a rigid application of the well-pleaded complaint rule a Procrustean bed for this court's jurisdiction. The Court cited its own prior statement in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986) that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." 108 S.Ct. at 2173 n. 2, 7 USPQ2d at 1113 n. 2. Indeed, the Court has long held: "If the history of the interpretation of judiciary legislation teaches us anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words." *Romero v. International Terminal Operation Co.*, 358 U.S. 354, 379, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 20, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983) (jurisdictional legislation interpreted "with an eye toward practicality and necessity.").

### The Well–Pleaded Complaint Rule

The Supreme Court has said "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower court in a cause under re-

view," *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). That injunction has particular application to this court, for under section 1295 we must satisfy ourselves not only that the district court had jurisdiction, but that that district court jurisdiction was based at least in part on section 1338 and therefore we have appellate subject matter jurisdiction. We are fully satisfied that such was the case here, where there was present before the district court a nonfrivolous compulsory counterclaim for patent infringement.

First, it is clear that MTW's counterclaim for patent infringement, had it been filed as a complaint, would fully comply with the well-pleaded complaint rule, and, because it states a separate cause of action unquestionably "arising under" (indeed created by) a patent statute (35 U.S.C. § 271) it would invoke the district court's jurisdiction under section 1338 and consequently this court's appellate jurisdiction under section 1295. It would seem at best incongruous to hold that we have appellate jurisdiction when a well-pleaded patent infringement claim is the basis of a pleading labeled "complaint" but not when the *identical* well-pleaded claim is the basis of a pleading labeled "counterclaim". The distinctions between complaints and counterclaims can be important in other contexts, but can have no meaningful role in governing the direction of the appeal under the unique statute that created this court when the counterclaim arises under the patent laws.

Second, MTW's counterclaim for patent infringement is a separate, well-pleaded claim with its own jurisdictional basis and that basis is section 1338.[6] Hence reliance upon a counterclaim with its own appeal-directing basis (§ 1338) as invoking our appellate jurisdiction accords with the well-pleaded complaint rule rightly understood. As the Court said in *Christianson*, the well-pleaded complaint rule "focuses on claims, not theories". 108 S.Ct. at 2175, 7 USPQ2d at 1114. Similarly, the rule deals with claims not issues. As was said by Justice Stevens in concurrence: "the 'well-pleaded complaint' rule helps ferret out claims from issues, and says nothing about whether such separation should be made only on the basis of the original complaint." *Id.* at 2180 n. 1, 7 USPQ2d at 1118 n. 1. Thus our present holding is not an unwarranted deviation from the well-pleaded complaint rule and, because counterclaims are normally filed at the pleading stage, the early-setting-of-the-appeal-route advantage of the rule envisaged in *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1432, 223 USPQ 1074, 1081 (1987) (in banc), is not lost. In all events, the Supreme Court did not hold in *Christianson*, or in any other case, that for all cases and circumstances only the complaint and never a counterclaim can serve as the basis of district court jurisdiction, and, under section 1295, the basis of district court jurisdiction is for this court an appeal-directing mechanism.

■ Third, the well-pleaded complaint rule does not defeat the district court's jurisdiction where, as here, there is a well-pleaded counterclaim having an independent federal jurisdictional basis. Nor does our present holding conflict with Congress' indication that cases would be within our jurisdiction "in the same sense that cases are said to 'arise under' federal law for purposes of federal question jurisdiction." House Report at 41. On the contrary, courts have frequently looked to counterclaims in determining that cases arise under federal law for purposes of federal question jurisdiction without regard to the complaint.

Thus courts have repeatedly retained jurisdiction and adjudicated a counterclaim having its own jurisdictional basis even where the court had no jurisdiction over the complaint. *Rengo Co. v. Molins Mach. Co.*, 657 F.2d 535, 539, 211 USPQ 303, 311 (3d Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981) ("a jurisdictional defect in the complaint will not pre-

---

**6.** That a compulsory counterclaim need not have an independent jurisdictional basis, *see Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974), is of no moment here where MTW's counterclaim *does* have an independent jurisdictional basis in section 1338 as will every counterclaim for patent infringement.

clude adjudication of a counterclaim over which the court has an independent basis [§ 1338] of jurisdiction"); *Pioche Mines Consol., Inc. v. Fidelity–Philadelphia Trust Co.*, 206 F.2d 336, 336–37 (9th Cir.), *cert. denied,* 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400 (1953) ("counterclaim persists where it is supported by an independent basis [diversity] for jurisdiction," even though complaint dismissed); *Isenberg v. Biddle*, 125 F.2d 741, 743 (D.C.Cir.1941) (where independent jurisdictional basis [trading with enemy act] exists for counterclaim that seeks affirmative relief, "it is sustainable without regard to what happens to the original complaint"). The Seventh Circuit retained jurisdiction of an antitrust counterclaim despite the dismissal (for absence of indispensable party) of a complaint for patent infringement in *Switzer Brothers, Inc. v. Chicago Cardboard Co.*, 252 F.2d 407, 410, 116 USPQ 277, 279–80 (7th Cir.1958), the court saying:

> It appears to be settled that where a counterclaim states a cause of action seeking affirmative relief independent of that stated in the complaint, the dismissal of the complaint does not preclude a trial and determination of the issues presented by the counterclaim.

In *Lion Manufacturing Corp. v. Chicago Flexible Shaft Co.*, 106 F.2d 930, 933, 43 USPQ 1, 3–4 (7th Cir.1939), the court upheld the adjudication of a patent infringement counterclaim notwithstanding a lack of district court jurisdiction over the complaint, saying:

> It does not follow that the court was without jurisdiction to determine the issues raised by the counterclaim and the answer thereto. The defendants, as legal owner and licensee, in their counterclaim, charged the plaintiff with infringement, and prayed for an accounting and an injunction. Thus, a cause of action for affirmative relief was stated. Under such circumstances, the dismissal of the bill of complaint did not preclude a trial and determination of the issues presented by the counterclaim and answer thereto.

In *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 389 (3d Cir. 1973), the court held that a counterclaim supported by independent jurisdiction [antitrust] afforded the district court federal jurisdiction:

> But where, as here, jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim, and it was error to dismiss it out of hand. There is no justification of putting the plaintiff in counterclaim to the expense, effort and risk of refiling his claim and attempting to re-establish personal jurisdiction over the opposing party.

*See also Duncan v. First Nat'l Bank*, 597 F.2d 51, 55 n. 3 (5th Cir.1979); *Blackman v. Hadron, Inc.*, 450 F.2d 781, 782–83, 171 USPQ 708, 709 (2d Cir.1971); *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961).

Similarly, the cases in which the courts have retained jurisdiction on the basis of counterclaims despite the plaintiff's voluntary dismissal of the complaint are legion. *See, e.g., Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir.1974); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 488 F.2d 382, 390, 180 USPQ 225, 230 (1st Cir.1973) (reversing dismissal of counterclaim for patent invalidity despite voluntary dismissal of complaint for infringement); *see also* 5 J. Moore, J. Lucas, & J. Wicker, *Moore's Federal Practice* ¶ 41.09 (2d ed.1988).

It should be remembered that the phrase "well-pleaded complaint" is merely the name of the rule, not a statement of a principle of law. Thus its application to the complaint in *Christianson* and other cases cannot be read as overruling the many above-cited precedents in which counterclaims arising under section 1338 and other federal statutes have been held to support the jurisdiction of the district courts.

Fourth, the basic purpose underlying the well-pleaded complaint rule is to avoid "potentially serious federal-state conflicts". *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846. No such conflicts are possible here, where we deal only with the direction of an appeal in a case already prop-

erly in the federal court system. Similarly, the plaintiff's right to choose a federal trial forum has already been fully exercised. Before the creation of this court, there was no "arising under" question related to direction of the appeal, where, as here, the case was correctly in the federal system. Hence the context here is not state/federal but federal/federal.

Though designed to answer the different state v. federal jurisdiction question, the ramifications of the well-pleaded complaint rule are useful and statutorily mandated analytical tools in determining our appellate jurisdiction when the relevant pleadings are only a complaint and answer, as in *Christianson.* This court so employed the rule in *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 517, 5 USPQ2d 1269, 1270 (Fed.Cir.1987); *Ballard Medical Prods. v. Wright,* 823 F.2d 527, 531, 3 USPQ2d 1337, 1339 (Fed.Cir.1987); and *Air Prods. & Chems. v. Reichhold Chems., Inc.,* 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed. Cir.), *cert. dismissed,* 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985). The rule can also be useful in testing whether a counterclaim passes muster as the equivalent of a well-pleaded complaint. *See, e.g., Manufacturer's Casualty Ins. Co. v. Arapahoe Drilling Co.,* 267 F.2d 5, 8 (10th Cir.1959). However, using the ramifications of the well-pleaded complaint rule to limit our appellate jurisdiction in every case by an exclusive focus on the complaint and a compelled disregard of compulsory counterclaims for patent infringement, would disserve the intent of Congress in creating this court.

### Legislative History

Our interpretation of section 1295 as a grant of appellate subject jurisdiction over cases involving nonfrivolous claims of patent infringement, whether those claims appear in a complaint or in a compulsory counterclaim, accords with the Congressional intent manifest in the legislative history of the FCIA. The broad theme of the FCIA—increasing nationwide uniformity in certain fields of national law—is epitomized here in the field of patent law. The availability of a clear, stable, uniform basis for evaluating matters of patent validity/invalidity and infringement/noninfringement renders more predictable the outcome of contemplated litigation, facilitates effective business planning, and adds confidence to investment in innovative new products and technology.[7] Those Congressional goals are facilitated when appeals in cases involving nonfrivolous claims arising under the patent laws, whether found in complaints or in compulsory counterclaims, are directed to this court.

Congress did not require that this court "get its hands on every appeal involving an allegation that a patent *issue* is somehow involved," *Atari,* 747 F.2d at 1429, 223 USPQ at 1078 (emphasis added). Yet Congress clearly wanted this court to get its hands on well-pleaded, nonfrivolous *claims* arising under the patent laws and thus to maximize the court's chances of achieving the congressional objectives that informed the FCIA. Congress did not mention the "well-pleaded complaint rule" as such and no warrant exists for reading that judicially created device into the statute when doing so would defeat the congressional purpose. Directing appeals involving compulsory counterclaims for patent infringement to the twelve regional circuits could frustrate Congress' desire to foster uniformity and preclude forum shopping. *See*

---

7. *See* House Report at 20 ("The establishment of a single court to hear patent appeals was repeatedly singled out by the witnesses who appeared before the Committee as one of the most far-reaching reforms that could be made to strengthen the United States patent system in such a way as to foster technological growth and industrial innovation. The new Court of Appeals of the Federal Circuit will provide nationwide uniformity in patent law, will make the rules applied in patent litigation more predictable and will eliminate the expensive, time-consuming and unseemly forum-shopping that characterizes litigation in the field."); Senate Report at 3–6, 29 ("The committee is concerned that the exclusive jurisdiction over patent claims of the new Federal Circuit not be manipulated. This measure is intended to alleviate the serious problems of forum shopping among the regional's [sic] courts of appeals on patent claims by investing exclusive jurisdiction in one court of appeals."); House Report at 23 ("the central purpose [in creating the Federal Circuit] is to reduce the widespread lack of uniformity and uncertainty of legal doctrine that exist[ed] in the administration of patent law.").

*Christianson,* 108 S.Ct. at 2181, 7 USPQ2d at 1119 (Stevens, J., concurring) ("Congress' goal of ensuring that appeals of patent-law claims go to the Federal Circuit would be thwarted by determining that court's appellate jurisdiction only through an examination of the complaint as initially filed. That approach would enable an unscrupulous plaintiff to manipulate appellate court jurisdiction by the timing of the amendments to its complaint.").[8]

The Supreme Court this term affirmed the rule that a construction that undermines a statute's goal cannot stand. *Community For Creative Non–Violence v. Reid,* — U.S. —, —, 109 S.Ct. 2166, 2177–78, 104 L.Ed.2d 811 (1989) (rejecting construction of Copyright Act that would "impede Congress' paramount goal in revising the [statute] of enhancing predictability and certainty of copyright ownership."). For all of the reasons stated here, construction of section 1295 in light of its legislative history as directing appeals to this court under the circumstances of this case cannot impede Congress' goal of enhancing predictability and certainty of the patent laws.

### Conclusion

Because MTW's compulsory counterclaim for patent infringement is a separate, nonfrivolous claim, having its own section 1338 jurisdictional basis independent of the jurisdictional basis of the complaint, the district court's subject matter jurisdiction in this case was based "in part" on section 1338. Accordingly, this court would have appellate subject matter jurisdiction over an appeal from a final judgment in this case, 28 U.S.C. § 1295, and thus has appellate subject matter jurisdiction over the appeal from the present interlocutory order. 28 U.S.C. § 1292.

---

**8.** A compulsory counterclaim must be filed, at the pleading stage or later by leave of court, or be abandoned. Fed.R.Civ.P. 13(a), 13(f); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1409 (1971 & Supp.1989). A compelled filing cannot be said to have been manipulative. Further, if it be frivolous it cannot support jurisdiction. *Schwarzkopf,* 800 F.2d at 244, 231 USPQ 50 (*quoting* House Report at 41); *Atari,* 747 F.2d at 1433–34, 223 USPQ at 1082–83.