JIM ARNOLD CORPORATION, Earl E. Ennis, and James F. Arnold, Plaintiffs–Appellants,

v.

HYDROTECH SYSTEMS, INC., Arkla, Inc., Diversified Energies, Inc., Minnegasco, Inc., Baker Hughes, Incorporated, Hughes Tool Company, Mohr Corp., Harvey O. Mohr, H.O. Mohr Research & Engineering, Inc., H.O. Mohr & Associates, Inc., Cal Dive International, Inc., Robert Wittman, H.S.I. Acquisition, Inc., Lee R. Larkin and Andrews & Kurth, Defendants–Appellees.

Nos. 95–1335, 95–1432.

United States Court of Appeals, Federal Circuit.

March 21, 1997.

Rehearing Denied; Suggestion for Rehearing In Banc Declined May 22, 1997.*

* Circuit Judge Rich did not participate in the votes.

Joseph W. Walker, Franklin, Mosele, & Walker, P.C., of Houston, Texas, argued for

plaintiffs-appellants. With him on the brief was Thomas J. Mosele.

John Wayne Kitchens, Jr., Hughes, Watters & Askanase, L.L.P., of Houston, Texas, argued for defendants-appellees Hydrotech Systems, Inc., Robert Wittman, and H.S.I. Acquisition, Inc. Counsel on the brief was Rod Hardie.

Joseph L. McEntee, Jones, Day, Reavis & Pogue, of Dallas, Texas, for defendants-appellees Arkla, Inc., Diversified Energies, Inc., and Minnegasco, Inc. Of counsel was Scott W. Burt.

Glenn A. Ballard, Jr., Bracewell & Patterson, L.L.P., of Houston, Texas, argued for defendants-appellees Baker Hughes Incorporated, Hughes Tool Company, Inc., and Cal Dive International, Inc. With him on the brief was John H. Barr, Jr. Of counsel was Ralph E. Kraft, Preis, Kraft & Roy, of Lafayette, Louisiana.

Richard L. Josephson, Baker & Botts, L.L.P., of Houston, Texas, argued for defendants-appellees Lee R. Larkin and Andrews & Kurth. With him on the brief was Stephanie K. Copp.

Before PLAGER, Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.

PLAGER, Circuit Judge.

This case turns on the jurisdictional reach of federal courts when both state-based and federal-based claims are put at issue in a complaint. Plaintiffs appeal from a decision on the merits rendered in favor of all defendants by the United States District Court for the Southern District of Texas. Plaintiffs originally filed their complaint in the district court of Harris County, 11th Judicial District, a Texas state court, against fifteen different defendants, asserting a variety of state-law claims, as well as one for patent infringement. Defendants, asserting their right under 28 U.S.C. § 1441, removed the case to federal court. The federal district court subsequently granted defendants' motions for summary judgment on the merits, holding that the claims were barred either by relevant state statutes of limitations or, in the case of the patent infringement claim, by laches. Plaintiffs took an appeal to the Fifth Circuit, which court denied defendants' motion to dismiss and transferred the appeal to this court.

The merits of the summary judgment were briefed and presented to this court at oral argument. However, at the argument, we raised with counsel the question of whether the case was properly in federal court at all, or whether jurisdiction lay exclusively in state court. We suspended further consideration of the merits pending additional briefing on the question of jurisdiction. The fact that none of the parties raised the issue, or that none of the other courts hearing the matter considered it, is not determinative. Federal courts are courts of defined jurisdiction, and a court must attend to its jurisdiction at all times.

Having now fully considered the additional briefs and the questions thereunder, we conclude, albeit reluctantly, that neither the district court nor this court has jurisdiction over the causes of action pled by plaintiffs. The matter belongs, if it belongs anywhere, in an appropriate state court. The judgment of the district court is vacated, and the matter remanded to that court with instructions to return the cause to the state court whence it came.

## BACKGROUND

Plaintiff James F. Arnold is an inventor. He patented a number of inventions covering devices used in the connection and repair of subsea oil pipelines and offshore platforms. Beginning in 1970 Arnold became involved in a number of agreements that related to these patents, in some of which he was a contracting party, and in some of which he was not but which related to the patents and rights arising under them. The story is somewhat convoluted, but necessary to an understanding of who the parties are and the nature of the dispute between them.

Arnold entered into an employment agreement with Hydrotech Services, Inc. ("HTS") on March 6, 1970. Under this agreement, Arnold agreed to assign his rights to technology he developed during the term of his employment. This agreement excluded any invention developed before March 6, 1970, however, and specifically excluded certain issued patents.

Subsequently, on August 1, 1973, Arnold entered into an agreement with Hydrotech International, Inc. ("HTI"), a newly-formed holding company and the successor in interest to HTS. Pursuant to this agreement, Arnold assigned all his rights in any "invention, innovation or improvement" developed during the term of the agreement to HTI, except for certain patents (the same ones that were excluded from the HTS agreement) and patent applications arising before Arnold's employment with HTS. In return, HTI covenanted, *inter alia*, to pay a royalty to Arnold on all tools sold by HTI that were either invented by Arnold or covered by his patents. Later, on December 27, 1973, Arnold and HTI entered into two assignment agreements in which Arnold assigned certain patents to HTI, including two of the patents that had been excluded from the earlier agreements.

Thereafter, in 1980, Hughes Tool Company ("Hughes Tool") informed Arnold that it desired to purchase HTI. That same year, Hughes Tool effected this purchase through its wholly-owned subsidiary, Hughes Undersea Couplings, Inc. ("Hughes Undersea"). In this acquisition, Hughes Undersea received all of HTI's assets, including the patents that HTI had acquired from Arnold. On October 20, 1980, Arnold entered into an agreement with Hughes Undersea ("the 1980 agreement") which was designed to supersede other agreements, including the agreement entered into on August 1, 1973 and the two assignment agreements entered into on December 27, 1973. The 1980 agreement stated that Arnold agreed to an assignment (presumably from HTI) of the various patents to Hughes Undersea.

The 1980 agreement contained a provision allowing either party (Arnold or Hughes Undersea) to assign the agreement to another party. This provision further provided that Hughes Undersea could assign any of the patents or patent applications covered by the agreement to a third party, provided that it notified Arnold of such assignment within ten days. Pursuant to this provision, on December 20, 1984, Hughes Tool (acting through Hughes Undersea) assigned its rights in particular patents and patent applications to Cal–Dive International, Inc. ("Cal–Dive"); Arnold was notified of the assignment on December 21, 1984. Cal–Dive later assigned all of its rights to H.S.I. Acquisition, Inc. (which later changed its name to Hydrotech Systems, Inc.), and made the necessary notification to Arnold on August 18, 1988.

Finally, in October 1988, Arnold sold his corporation, the Jim Arnold Corporation, to Earl E. Ennis ("Ennis"). In connection with this sale, Arnold assigned to Ennis all of his rights in the patents developed by him and any rights he had in agreements with HTI, Hughes Tool, Cal–Dive, and H.S.I. Acquisition, Inc./Hydrotech Systems.

Thus, as of the date of the Texas state court action in August of 1993, as a result of the chain of transactions and assignments outlined above, Hydrotech Systems, Inc. apparently owned the relevant patents, while any interests that remained with Arnold following the 1973 and 1980 agreements, along with his rights under the various agreements, apparently were owned by Ennis.

In the following discussion, the plaintiffs will be designated collectively as "Arnold," and referred to in the singular; the defendants may sometimes be referred to as "Hughes." (The defendants not named above are not involved in the claims regarding the 1980 agreement, but are in the suit based on other theories. Our disposition regarding jurisdiction applies to all the claims raised, and therefore we need not differentiate among these defendants.)

As noted, plaintiff Arnold in 1993 filed its complaint in a Texas state court, asserting both state and federal claims. Defendants removed the case to the United States Dis-

trict Court for the Southern District of Texas under the provisions of 28 U.S.C. § 1441, on the theory that the case was one which arose in whole or in part under the patent laws of the United States, and therefore original and exclusive jurisdiction lay in the federal district court pursuant to 28 U.S.C. § 1338. The record does not indicate that plaintiff opposed the transfer. Plaintiff did oppose the judgment eventually awarded by the District Court, however. That court granted summary judgment in favor of all defendants. All counts except the patent infringement count were ruled in favor of the several defendants on the basis of various Texas statutes of limitations. The patent count was ruled in favor of the defendants on the ground of laches.

Plaintiff appealed from that judgment to the Fifth Circuit. Since the presumed basis for federal court jurisdiction was § 1338, the appeal properly lay in this court. The Fifth Circuit declined defendants' motion to dismiss the appeal, and transferred the matter to this court.

## DISCUSSION

### A.

Before we may reach the merits of a case we must, as a threshold issue, attend to our jurisdiction. This case is here on removal, at the trial level, from the state court in which plaintiff placed it. Unless expressly provided otherwise by statute, a civil action brought in a state court may be removed to a federal district court, but only if a federal district court could have exercised original jurisdiction over the cause. 28 U.S.C. § 1441 (1994). *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). The question we must answer, therefore, is whether federal subject-matter jurisdiction would exist over this case had it originally been filed in federal court. If the answer is yes, then removal was proper, and the matter is before us on the merits;

if the answer is no, then removal was improper and federal courts are without jurisdiction to determine the cause.

28 U.S.C. § 1338 states that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents.... Such jurisdiction shall be exclusive of the courts of the states...." 28 U.S.C. § 1338(a) (1994). Whether the case originally could have been heard under § 1338 depends on whether the plaintiffs, in a well-pleaded complaint, state a claim which arises under the patent law. A claim arises under the patent law if patent law creates the cause of action or is a necessary element of one of the well-pleaded claims. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988). This is not a case in which patent law is a necessary element of some other well-pleaded claim. Thus, if federal jurisdiction exists, it is because patent law created a cause of action.

The seemingly simple phrase "arising under" has engendered litigation and argument for at least a century. *Schwarzkopf Dev. Corp. v. Ti–Coating,* 800 F.2d 240, 243, 231 USPQ 47, 49 (Fed.Cir.1986). Justice Holmes stated the rule to be that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Though this may not be a self-evident prescription, case law gives us considerable guidance into what the phrase means in the context of a case such as this.

The right of a patentee to a remedy for patent infringement is created by the patent statute, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). The term "patentee" includes "successors in title to the patent." 35 U.S.C. § 100(d) (1994). To invoke the jurisdiction of a federal court under § 1338, it is necessary that plaintiff allege facts that demonstrate

that he, and not the defendant, owns the patent rights on which the infringement suit is premised. Furthermore, this allegation of ownership must have a plausible foundation. Federal jurisdiction cannot lie based on allegations that are frivolous or insubstantial. *See Cervantez v. Bexar County Civil Service Comm'n,* 99 F.3d 730, 733 (5th Cir.1996). Thus, if plaintiff cannot in good faith allege such facts because, absent judicial intervention to change the situation, under the terms of a contract or deed of assignment the rights at issue are held by the defendant, federal court is not the place to seek that initial judicial intervention.

It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law. It is well settled that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one "arising under" the patent laws. *See, e.g., New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513 (1912) (state court has jurisdiction of suit for specific performance of contract to assign patent); *Geneva Furniture Mfg. Co. v. S. Karpen Bros.,* 238 U.S. 254, 35 S.Ct. 788, 59 L.Ed. 1295 (1915) (upholding federal jurisdiction over part of a bill charging contributory infringement; rest of bill not sustainable because based on contract); *Becher v. Contoure Labs., Inc.,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929) (explaining why state court has jurisdiction over bill to compel assignment of a patent tortiously secured by patentee). *See also Schwarzkopf Development Corp. v. Ti–Coating, Inc.,* 800 F.2d 240, 231 USPQ 47 (Fed.Cir.1986); *Beghin–Say Int'l, Inc. v. Ole–Bendt Rasmussen,* 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir.1984). *See also Christianson v. Colt Indus. Operating Corp.,* 822 F.2d 1544, 1552, 3 USPQ2d 1241, 1246–47 (Fed.Cir.1987), *vacated on jurisdictional grounds and remanded,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109 (1988).

Plaintiff Arnold contends that his complaint to the state court clearly showed that he had assigned all right, title, and interest in the patents at issue to Hughes; that he had no ownership interest in the patents on which to sue unless and until the state-provided remedy of rescission was granted; and that his causes of action thus lay exclusively in state court. Defendants, in support of the District Court's decree in their favor, argue that plaintiff's original petition contains a well-pleaded claim for patent infringement under 35 U.S.C. § 271, and that the need to decide a question of contract law prior to reaching the infringement question does not defeat federal subject-matter jurisdiction.

For the reasons we shall explain, we reluctantly come to the conclusion that plaintiff is correct, and that federal jurisdiction does not lie over the causes of action pleaded by Arnold in his original petition filed in the state court of Harris County. We say reluctantly because judicial economy would suggest that plaintiff has had his day in court with regard to an initial determination of his claims at the trial level, and that the correctness of that determination is now a matter of appellate review of its merits. Nor does plaintiff have much in the way of equities in his favor. Although defendants brought this problem upon themselves by initiating the removal of the case to federal court, plaintiff apparently did nothing to resist the removal, and did not even bother to raise the jurisdiction issue here on appeal. Though plaintiff thus may have no claim on our sympathies, and though the result of a trial in state court may replicate the result reached by the federal district court, considerations of judicial economy cannot trump a clear rule of law, particularly one that goes to the very power of the court to decide the case.

**B.**

■ Plaintiff's complaint filed in the district court of Harris County, Texas, denominated "Plaintiffs' Original Petition," consists

of twenty numbered parts, containing 99 numbered paragraphs. Fifteen different defendants, corporate and individual, were named in Part I. In Part II, headed "Jurisdiction and Venue," the jurisdictional paragraph (paragraph 20) states that "This court [the Harris County court] has jurisdiction pursuant to Article 17.042 of the Tex. Civ. Prac. & Rem.Code Ann. because is [sic] involves contracts with a Texas resident to be performed in part in this state and torts committed in part in this state." The complaint then recites a series of background facts, identifies the patents which were the subject of the several agreements described above, and alleges, *inter alia*, the failures of the defendants to perform according to the terms of the agreements.

The complaint then pleads, with respect to the named defendants, causes of action for various state-based claims. Part IV, entitled "Fraud, Misrepresentation, and Fraudulent Concealment," contains paragraphs alleging that defendants deliberately made false representations of material fact regarding actual sales and other aspects of the agreements on which plaintiff relied; Part V, entitled "Breach of Fiduciary Duties," contains paragraphs alleging that defendants, as a result of the assignments, had a confidential or fiduciary relationship with plaintiff, which by their conduct was breached; Part VI, entitled "Breach of the Duty of Good Faith and Fair Dealing," alleges that as an alternative to the fiduciary obligations, defendants, by acquiring an interest in plaintiff's patents and inventions, had a duty of good faith and fair dealing, again breached by their failure to properly account under the assignments; Part VII, entitled "Tortious Interference with Contractual or Business Relations," alleges that defendants, knowing of the royalty obligations contained in the agreements, conspired together to encourage breaches of those obligations; Part VIII (mislabeled VII), entitled "Civil Conspiracy," alleges that defendants conspired to prevent plaintiff from receiving the royalties due under the licensing agreements; Part IX, entitled "Constructive Fraud," alleges that the conduct as described in the prior paragraphs constitutes constructive fraud; and Part X, entitled "Breach of Contract," contains paragraphs alleging that defendants' actions in non-payment of royalties due plaintiff constitutes breach of the assignment contracts.

Following the substantive allegations, there is a part entitled "Rescission" (Part XI). In this section plaintiff, based on the wrongs previously alleged, seeks, *inter alia*, "a judgment rescinding the contract assigning patents to Defendants and requiring all Defendants to reassign all right, title, and interest to said patents to Plaintiffs." (Paragraph 73.) Plaintiff states that "since the contract between Plaintiffs and Defendants has been void since on or before 1980, Plaintiffs seek recision [sic] of the contracts assigning patents by Hughes Tool Company to Cal–Dive, Inc., (Diversified Energies, Inc.) to HSI Acquisition, Inc., as Defendants had no interest to assign." (Paragraph 74.) Plaintiff further seeks judgment from the court requiring defendants to reassign all right, title and interest in the patents. (Paragraph 75.)

This section is followed by Part XII, entitled "Patent Infringement." In numbered paragraph 76, plaintiff alleges that "[a]ltertively [sic], since the agreements assigning the patents from Plaintiffs to Defendants has [sic] been null and void since at least 1980, said Defendants are and have been infringing upon Plaintiffs' patents ... in direction violation of 35 U.W.C. [sic] 271, et seq. since that date." In two subsequent paragraphs plaintiff alleges that the infringement was willful, and that, unless restrained, it would continue.

The remainder of the complaint contains claims for accounting (Part XIII) and damages (Parts XIV–XVI), including damages for "actual damages," "mental anguish damages," and "exemplary damages" arising from the various contractual breaches and other alleged wrongs. In one of the paragraphs on "actual damages" plaintiff states: "[a]lternatively, in the event this Court

grants Plaintiffs' requested recision [sic] of the 1980 assignment agreement or other agreements, Plaintiffs will be entitled to recover for Defendants' continuing acts of patent infringement." (Paragraph 87.) A later paragraph asks for treble damages for willful infringement "[i]n the event this Court grants Plaintiffs' requested recision [sic] of the 1980 assignment contract...." (Paragraph 94.) After other miscellaneous paragraphs, the complaint ends with a prayer for all damages due as permitted by law.

Viewed in its entirety, the complaint leaves no doubt that plaintiff's suit is premised on a state-law based set of claims arising out of an alleged breach of an assignment and royalty agreement. Plaintiff's repeated reference to the need for rescission of the assignment agreement, and the desired legal consequences that would flow from a decree of rescission, point inexorably to the fact that his claim is a claim for a contract wrong. Inclusion in the complaint of the statement "the agreements assigning the patents from Plaintiffs to Defendants has [sic] been null and void since at least 1980" does not change the clear gravamen of the complaint. At best that statement is a conclusion of law based on plaintiff's assumption about what the facts will prove; it falls far short of the necessary well-pleaded allegation of ownership of patent rights, the very rights which are the subject of the dispute.

When fully analyzed, the complaint can only be read to say that in order for the federal district court to reach the patent infringement claim, it first must resolve the ownership interests resulting from the long and convoluted chain of transactions and assignments therein outlined. In addition, the court would have to determine whether, as a matter of contract remedy, to rescind the assignments based on Arnold's various claims of contract wrongs. Assuming that the district court decided that the relevant assignments should be rescinded and that Arnold should be declared the owner of the patents, only then could it reach the patent infringement issue.

### C.

Defendants argue that under the law as it is understood today, that is precisely what the federal district court is to do, and in so doing the court does not transgress its jurisdictional limits. To understand the evolving history as defendants see it, we must go back almost a century and a half to a Supreme Court case decided in 1850.

In *Wilson v. Sandford*, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850), plaintiff filed his bill in the Circuit Court of the United States for the District of Louisiana. He alleged infringement of his patent, and sought an injunction prohibiting further use of his machine by defendants. He further alleged that he had earlier given a license to defendants permitting them to use his patented machine, but that the license was expressly conditioned on their making the specified payments. If the payments were not made as specified, the license provided that any rights granted thereunder would revert to the plaintiff patentee.

Plaintiff alleged that since the payments were not made as specified, the patent reverted to him, and he thus was suing for a declaration and for an injunction. The Supreme Court held that there was no jurisdiction under the Patent Act: "the injunction he asks for is to be the consequence of the decree of the court sanctioning the forfeiture." That is a contract dispute, not a patent law dispute, said the Court.

*Wilson* set the stage for *Luckett v. Delpark, Inc.*, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926). In *Luckett*, plaintiff Luckett entered into a nonexclusive license agreement with defendant Delpark, Inc., a license later made exclusive by a supplemental agreement. Allegedly, Delpark failed to pay Luckett royalties under the agreement, and Luckett brought suit in federal district court. In his complaint, among other contentions, Luckett asserted that Delpark was infringing his patents. Luckett requested, *inter alia,* that the license be canceled and that Delpark be enjoined from continuing to make and

deliver the alleged infringing articles.[1] The district court dismissed Luckett's suit for lack of jurisdiction, and the Supreme Court affirmed. In reaching its decision, the Court reviewed at length the case law dealing with distinguishing cases that arise under the patent laws, thus conferring federal subject matter jurisdiction, from cases in which construction or enforcement of a contract or license is the issue, cases in which subject matter jurisdiction lies not in federal courts but in state courts. The Court summarized its understanding of the law thusly:

> [W]here a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, or asks the aid of the court in declaring a forfeiture of the license, or in restoring an unclouded title to the patent, he does not give the federal District Court jurisdiction of the cause as one arising under the patent laws. Nor may he confer it in such a case by adding to his bill an averment that after the forfeiture shall be declared, or the title to the patent shall be restored, he fears the defendant will infringe, and therefore asks for an injunction to prevent it. That was *Wilson v. Sandford* [sic]. If in that case the patentee complainant had based his action on his patent right and had sued for infringement, and by anticipation of a defense of the assignment had alleged a forfeiture by his own declaration without seeking aid of the court, jurisdiction under the patent laws would have attached, and he would have had to meet the claim by the defendant that forfeiture of the license or assignment and restoration of title could not be had except by a decree of a court, which, if sustained, would have defeated his prayer for an injunction on the merits. But when the patentee exercises his choice, and bases his action on the contract, and seeks remedies thereunder, *he may not give the case a double aspect, so to speak, and make it a patent case condi-*

> *tioned on his securing equitable relief as to the contract.*

*Luckett,* 270 U.S. at 510–11, 46 S.Ct. at 402 (emphasis added).

More recently, this court, in *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559 (Fed.Cir.1985), relied heavily on the *ratio decidendi* expressed in *Luckett,* and cited extensively to the cases reviewed there. In *Air Products,* patentee Air Products granted a nonexclusive license to a party who later assigned its rights under the license to defendant Reichhold. *Id.* at 1560. The license agreement contained a termination clause, upon which Air Products allegedly relied in terminating Reichhold's license. *Id.* Air Products alleged that, subsequent to the termination, Reichhold started infringing and continued to infringe Air Products' patent. *Id.* Air Products filed suit against Reichhold in federal district court, predicating jurisdiction on section 1338. *Id.* The district court read the complaint as primarily stating a claim sounding in contract, involving construction of the license. As a consequence the court dismissed the complaint for lack of subject matter jurisdiction.

On appeal, this court reviewed the state of the law as set forth in *Luckett.* The court then stated that "[a] court must review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws, or is a cause of action based upon a licensing agreement." *Id.* at 1562.

Its review of the pleadings led the court to conclude that the district court erred in dismissing the complaint. The court noted that Air Products averred that it had unilaterally terminated the license agreement as it was entitled to do; that as a result it was the owner of the patent in suit; and that Reichhold was infringing the patent which Air Products owned. The fact that the question

---

1. Luckett had also assigned the title of a second patent to another defendant, and requested that the court order that defendant to formally reassign title back to Luckett. *Id.* Luckett did not, however, make any assertions of infringement by this defendant. *See id.*

of whether the termination was proper remained in the case, and that Air Products asked the trial court for a declaration of its full ownership of the patent, arguably undercut its position. The court nevertheless concluded that under the facts alleged it was not necessary for the patentee to first seek state-law forfeiture of the license before bringing its patent suit. The court thus distinguished earlier cases in which the patentee's prior license, presumptively still in effect, was held to bar federal jurisdiction.

Defendants, citing *Kunkel v. Topmaster Int'l, Inc.,* 906 F.2d 693, 15 USPQ2d 1367 (Fed.Cir.1990), argue that the fact that a state-law question must be decided as a precondition to a patent law question does not work to automatically deny jurisdiction. In *Kunkel,* as in *Air Products,* this court was called upon to decide whether a claim for patent infringement, when coupled with claims seeking rescission of a license and other relief, states a claim within the purview of the federal court, or only within that of a state court. As in *Air Products,* the district court had dismissed Kunkel's suit for lack of subject matter jurisdiction. This court reversed, stating that the patentee had adequately pled ownership of a patent still in force, and infringement by defendants. The court noted that a federal court is not deprived of subject matter jurisdiction when a plaintiff bases his claim upon, and seeks remedies under, the patent laws, even though the complaint also anticipates a defense of license and thus puts the license question in issue. *Id.* at 696–97.

■ Defendants' reliance on *Air Products* and *Kunkel* is misplaced. To determine whether section 1338 jurisdiction attaches, the court must look to see whether the plaintiff has stated, in a well-pleaded complaint, a claim arising under the patent laws. *Vink v. Schijf,* 839 F.2d 676, 676–77, 5 USPQ2d 1728, 1730 (Fed.Cir.1988). "The well pleaded complaint rule contemplates that the answer to whether an action arises under federal law 'must be determined from what necessarily appears in the plaintiff's statement of his own

claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Id.* (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)). Furthermore, we have stated that "the court must consider as a whole the substance of the claim in addition to the language of the complaint, and may also consider jurisdictional facts outside the pleadings." *Air Products,* 755 F.2d at 1561, 225 USPQ at 122.

In this case, viewing the complaint in its entirety, we are left with the conclusion that plaintiff's suit is premised on a state-law based set of claims arising out of alleged breaches of the assignment agreements. Essentially the entire complaint is directed to causes of action based on various state-based claims. Moreover, plaintiff repeatedly refers to the need for rescission of the assignment agreements, as indicated by Paragraphs 73 and 74 of the complaint, which request rescission, and by Paragraph 87, in which plaintiff states that "in the event [the trial court] grants Plaintiffs' requested recision [sic] of the 1980 assignment agreement and other agreements, Plaintiffs will be entitled to recover for Defendants' continuing acts of patent infringement." These references point inexorably to the fact that the claim is one for a contract wrong. *See, e.g., Beghin–Say Int'l, Inc. v. Rasmussen,* 733 F.2d 1568, 1570–71, 221 USPQ 1121, 1123 (Fed.Cir. 1984); *Schwarzkopf Dev. Corp. v. Ti–Coating, Inc.,* 800 F.2d 240, 244, 231 USPQ 47, 50 (Fed.Cir.1986).

■ The sole possible basis for finding federal jurisdiction under section 1338 is found in Paragraph 76 of the complaint. There, plaintiff states that, because "the agreements assigning the patents from Plaintiffs to Defendants has [sic] been null and void since at least 1980, said Defendants are and have been infringing upon Plaintiffs' patents as enumerated in paragraph 3 in direct violation of 35 U.W.C. [sic] 271, et seq. since

that date." However, this statement does not change the clear gravamen of the complaint. Moreover, as explained below, standing alone the statement fails to present a nonfrivolous allegation of ownership of the patents. Federal subject matter jurisdiction cannot attach based on frivolous allegations.

■■■ While *Wilson, Luckett, Air Products,* and *Kunkel* all involved license agreements, the present case involves an assignment. Licenses are considered as nothing more than a promise by the licensor not to sue the licensee, *Spindelfabrik Suessen–Schurr v. Schubert & Salzer,* 829 F.2d 1075, 1081, 4 USPQ2d 1044, 1048 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988), and title to the patent does not change hands under a license agreement. However, assignments[2] pass title to the patentee's rights, with all the accompanying rights of ownership, from the patentee to the assignee. *See* Chisum, *Patents,* § 21.03[2][a]-[b], at 21–154 to 21–155 (1996); *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1030 (Fed.Cir.), *cert. denied,* ─ U.S. ─, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995); *Green v. Le Clair,* 24 F.2d 74, 76–77 (7th Cir.1928) (citing *Rude v. Westcott,* 130 U.S. 152, 163, 9 S.Ct. 463, 467, 32 L.Ed. 888 (1889)).

■■■ Therefore, in the case of a license agreement having a rescission clause, a patentee in a suit for infringement can properly assert that it owned the patent at the time of infringement and that the defendant is infringing the patent. *See, e.g., Air Products,* 755 F.2d at 1560. In such cases, the plaintiff does not seek any specific equitable relief as a prerequisite to bringing the infringement claim. *Id.* Thus, the district court can treat defendant's claim of a license as a defense to the assertion that he is infringing, and the court can decide that issue first as a matter of efficient management of the trial. As we stated in *Air Products:*

We recognize that in cases where a license is plead as a defense, or where the license defense is anticipated in the complaint, that the most expeditious conduct of the trial would necessitate that the license issue be resolved first, for if the license issue is resolved in the defendant's favor the infringement issue is mooted.... A district court ... is not precluded in patent suits from resolving non-patent questions, and the fact that a question of contract law must be decided prior to reaching the infringement question does not defeat federal subject matter jurisdiction.

*Air Products,* 755 F.2d at 1563, 225 USPQ at 124.

■■■ However, when the infringement suit involves an assignment, unless the assignment may be declared null and void by operation of law—either through a forfeiture provision present in the agreement or under a provision of applicable state law—an assignor suing for infringement must first affirmatively seek equitable relief from a court to rescind or cancel the assignment. Until ownership is restored in the assignor, there can be no act of infringement by the assignee. Federal question jurisdiction must exist at the time the complaint is filed for a federal court to exercise authority over the case, *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993), and without first receiving equitable relief that restores to the assignor title to the patent, any claim of ownership by the assignor will be unfounded. Further, because an action to rescind or cancel an assignment is a state-law based claim, *see Ausherman v. Stump,* 643 F.2d 715, 718 (10th Cir.1981), absent diversity jurisdiction it is to a state court that plaintiffs must look in seeking a forfeiture of the license. *Air Products,* 755 F.2d at 1564, 225 USPQ at 124; *see Wilson,* 51 U.S. (10 How.) at 102, *Luckett,* 270 U.S. at 510, 46 S.Ct. at 401.

*Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891); *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir.1995).

---

**2.** An assignment of the patent can only be effected by conveying either the entire patent, an undivided part or share of the entire patent, or all rights under the patent in a specified geographical region of the United States. *Waterman v.*

Defendants put heavy reliance on *Kunkel,* and argue that consequently *Wilson* and *Luckett* are no longer good law. It is true that *Kunkel* states that *Wilson* and *Luckett* were based on a distinction between law and equity, a distinction no longer applicable on account of the merger of law and equity courts by the Federal Rules of Civil Procedure of 1938. *Kunkel,* 906 F.2d at 696. A close reading of the two Supreme Court cases, however, indicates that the result reached in those cases was not dependent on the existence of a distinction between causes of action at law and those in equity. Indeed, as the quote above from *Luckett* demonstrates, the Court included both causes of action at law for damages and causes of action in equity for specific performance in the same sentence, and treated them alike in terms of the issue discussed. Whatever has been the consequence of the formal merger of law and equity in federal courts in terms of the manner of pleading and the power of a federal judge to grant both types of remedies, the distinction between law and equity has continued viability today, not the least in terms of theory underlying causes of action and availability of certain kinds of remedies. The merger was of courts and process, not underlying theories of claims and relief. The result in *Kunkel* is fully consistent with Supreme Court authority; defendant's use of it is not.

In this case, the assignment agreements specifically invoke Texas law, which governs the contractual rights and obligations of the parties. *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1117 (Fed.Cir.1996). In the state court complaint, plaintiff asserted that, due to defendants' breaches of the assignments, the assignments had become null and void, thereby re-establishing ownership of the patents in plaintiff Arnold. In essence, plaintiff alleged that the defendants' actions had caused a forfeiture of the assignments. However, there is no forfeiture language in any of the agreements. Thus, the agreements do not recite conditions subsequent upon the occurrence of which forfeiture takes place.

As far as Texas law generally is concerned, we have found no authority to support the proposition that, following a breach of the assignments, the plaintiff could unilaterally declare the agreements null and void and thereby reobtain ownership of the patents that are covered by the assignments. Yet, that is precisely what plaintiff asserts in Paragraph 76 of the complaint. Texas case law indicates that a party must seek the aid of a court in order to obtain cancellation or rescission of an assignment, thus obtaining reassignment of title. *See, e.g., Humphrey v. Camelot Retirement Community,* 893 S.W.2d 55, 59 (Tex.App.1994) (stating that a trial court may grant rescission, and that the decision to grant rescission lies within its sound discretion); *Owens v. Ridgeway,* 395 S.W.2d 704, 705 (Tex.Civ.App.1965) (noting that plaintiff brought suit to cancel and rescind certain assignment agreements). District courts plainly do not have patent law jurisdiction over these kinds of actions under section 1338. *See Schwarzkopf Dev. Corp. v. Ti–Coating, Inc.,* 800 F.2d 240, 244, 231 USPQ 47, 50 (Fed.Cir.1986). Paragraph 76 of the state court complaint fails to present a nonfrivolous allegation of ownership of the patents at issue sufficient to confer jurisdiction on the district court pursuant to 28 U.S.C. § 1338.

This case is a classic example of the importance of precise phrasing in a legal document. And the phrasing in a complaint is the plaintiff's phrasing. As this court in *Air Products* so aptly reminded, " 'the party who brings suit is master to decide what law he will rely upon,' *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), [and] that '[j]urisdiction generally depends upon the case made and the relief demanded by the plaintiff.' *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915)." *Air Products,* 755 F.2d at 1562.

The anomalous pleading in this case of an inadequate patent claim in the midst of a contract-based law suit has resulted in a substantial waste of judicial and litigant re-

sources. The remedy for that, however, is not an equally unfounded assumption of jurisdiction. Given the clear guidance of the Supreme Court and of this court's precedents, there can be no doubt that the case brought by Arnold did not "arise under the patent laws." *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Since the well-pleaded claims in "Plaintiffs' Original Petition" filed in the district court of Harris County could not have been the basis for original jurisdiction in the federal district court, that court erred in permitting removal of the case from the state court and in assuming jurisdiction over the cause.

## CONCLUSION

Accordingly, the judgment of the federal district court in favor of defendants is vacated, and the matter remanded to that court with instructions to return the case to the district court of Harris County.

VACATED AND REMANDED WITH INSTRUCTIONS.