# United States Court of Appeals
# for the Federal Circuit

---

**FIRST DATA CORPORATION, FRANK BISIGNANO,**
*Plaintiffs-Appellants*

**v.**

**ERIC INSELBERG, INSELBERG INTERACTIVE, LLC,**
*Defendants-Appellees*

--------------------------------------------------------------------------------

**ERIC INSELBERG, INSELBERG INTERACTIVE, LLC,**
*Plaintiffs-Appellees*

**v.**

**FRANK BISIGNANO,**
*Defendant*

**FIRST DATA CORPORATION,**
*Defendant-Appellant*

---

2016-2677, 2016-2696

---

Appeals from the United States District Court for the District of New Jersey in Nos. 2:15-cv-08301-KM-JBC, 2:16-cv-00317-KM-JBC, Judge Kevin McNulty.

---

Decided:  September 15, 2017

———————————

WILLIAM ADAMS, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for plaintiffs-appellants in No. 2016-2677 and defendant-appellant in No. 2016-2696.  Also represented by MICHAEL BARRY CARLINSKY, ELLYDE R. THOMPSON, MATTHEW A. TRAUPMAN.

BRIAN CHRISTOPHER BROOK, Clinton Brook & Peed, New York, NY, argued for defendants-appellees in No. 2016-2677 and plaintiffs-appellees in No. 2016-2696.

———————————

Before NEWMAN, O'MALLEY, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

First Data Corporation ("First Data") and Frank Bisignano ("Bisignano") appeal from the district court's dismissal of their counterclaims and their declaratory judgment action under Federal Rule of Civil Procedure 12(b)(1).  *See Bisignano v. Inselberg*, Nos. 15-8301 (KM) (JBC), 16-317 (KM) (JBC), 2016 U.S. Dist. LEXIS 113563 (D.N.J. Aug. 25, 2016) (*District Court Opinion*).  They also object to the district court's order remanding their state law claims to state court.  Because the district court correctly dismissed the federal claims for lack of subject matter jurisdiction and we cannot review the remand order, we affirm.

## I. BACKGROUND

Eric Inselberg ("Inselberg") is the inventor of various systems by which audiences interact with live events, such as concerts and football games.  *Id.* at *4.  The patents he received for his inventions were formerly held by Inselberg Interactive ("Interactive"), which also is a party in this appeal.  *Id.*

The ownership dispute regarding Inselberg's patent portfolio at the heart of this case stems from a $500,000 loan that Interactive received from Bisignano in August 2010. *Id.* at *5. Inselberg personally guaranteed the loan, and Interactive granted Bisignano a security interest in the portfolio of patents it owned at the time. *Id.*

In 2011, federal authorities brought criminal charges against Inselberg that allegedly impaired his ability to transact business, and Inselberg and Interactive defaulted on the loan from Bisignano. *Id.* Inselberg and Bisignano entered into an agreement that purported to convey Interactive's patent portfolio to Bisignano. *Id.* The assignment agreement specified that Interactive transferred "all right, title and interest" in the patent portfolio. J.A. 351. Shortly thereafter, Bisignano became the CEO of First Data.

In October 2014, Inselberg met with Bisignano regarding the potential value of the patents. Inselberg noted that First Data was using the patented technology without a license, and he proposed that First Data purchase or license the patents. *District Court Opinion*, 2016 U.S. Dist. LEXIS 113563, at *7. Around this time, Inselberg also began claiming that the assignment to Bisignano was invalid. *Id.* at *11. In November 2014, Inselberg sent First Data a claim chart laying out First Data's alleged infringement of the patents. Shortly thereafter, Bisignano granted First Data a royalty-free license. *Id.* at *7.

In December 2014, Inselberg, through counsel, maintained that the assignment agreement was invalid. *Id.* at *11. Inselberg's counsel wrote to First Data in September 2015 stating that the assignment had "severe problems" that likely made it void under New Jersey state law. *Id.* at *12. In these communications, Inselberg took issue with Bisignano's failure to monetize the patents and the royalty-free license given to First Data. *See id.* Inselberg

asserted that First Data was infringing the patents and Bisignano was liable for damages "amounting to at least 1/3 of the fair market value of the license." *Id.*

In October 2015, Inselberg's counsel sent Bisignano and First Data a draft state court complaint. *Id.* The draft complaint asserted a number of state law claims and sought a declaration that Inselberg and Interactive were the true owners of the patents and were entitled to sue for infringement. *Id.* The draft complaint also included one federal law claim of infringement against a First Data subsidiary with respect to one of the patents. *Id.* at *12–13.

On November 19, 2015, Inselberg's counsel sent Bisignano and First Data a second draft of the state court complaint. *Id.* at *13. The second draft did not contain any claims for patent infringement. *Id.* Inselberg's counsel stated that it intended to file the draft complaint on November 30, 2015, unless the parties reached a settlement. *Id.*

Two cases were filed based on this dispute. First, Bisignano and First Data filed a complaint in the United States District Court for the District of New Jersey seeking declaratory judgment regarding the validity of the license agreement and Bisignano's ownership of the patent portfolio. *Id.* at *2. According to Bisignano and First Data, they filed their case to preempt what they believed was an inevitable infringement action by Inselberg and Interactive. *Id.* First Data asserted that it would win any infringement action brought by Inselberg and Interactive because Bisignano, not Interactive, owns the patents and licensed them to First Data. *Id.* The amended complaint contained four counts seeking, *inter alia*, a declaratory judgment of noninfringement by First Data. *Id.* at *14. Bisignano and First Data brought the action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

Shortly thereafter, Inselberg and Interactive filed a complaint in New Jersey Superior Court. *District Court Opinion*, 2016 U.S. Dist. LEXIS 113563, at *2–3. Inselberg and Interactive only asserted state law claims in the complaint filed with the state court; they did not assert any patent claims. *Id.* at *3. Along with various business tort and contract claims, Inselberg and Interactive sought declarations that the assignment agreement was invalid and that the patents were owned by them, not Bisignano. Bisignano and First Data filed an answer that included four counterclaims asserted by First Data. *Id.* at *9. The counterclaims requested, *inter alia*, a declaratory judgment of noninfringement of the patents and a declaratory judgment of invalidity for one of the patents in the portfolio. *Id.* After filing their answer and counterclaims, Bisignano and First Data removed the state court action to the District of New Jersey. *Id.* The Notice of Removal invoked the federal court's jurisdiction over patent cases, citing 28 U.S.C. §§ 1338, 1441(a), 1446, and 1454(a). *Id.*

Inselberg and Interactive filed a motion to dismiss the declaratory judgment complaint, a motion to dismiss the counterclaims in the case originally filed in state court, and a motion to remand the state-law claims back to state court. *Id.* at *15.

The district court found that Inselberg and Interactive's claims were all state law claims involving property rights created by state statute or common law. The court concluded that the state law questions regarding the validity of the assignment did not depend on the outcome of any federal law issue or the interpretation of a federal statute. *Id.* at *20–21. "Indeed, it is the other way around; unless Inselberg prevails on his state law claims and regains ownership of the patents, he cannot possess a federal claim of infringement." *Id.* at *21. The district court found that the alleged patent law issues were "incidental and contingent" because neither Inselberg nor Interactive was the current owner of the patents and

neither was suing as the patentee. *Id.* The rights at issue in the case, therefore, were ownership rights turning on questions of state law. *Id.* The district court also concluded that this did not become a patent case merely because some of the damages might be measured based on "forgone royalties." *Id.* at \*21–22.

In its analysis, the district court relied on our decision in *Jim Arnold Corp. v. Hydrotech Systems, Inc.*, 109 F.3d 1567 (Fed. Cir. 1997). There, the plaintiff attempted to assert an infringement claim, but that claim was contingent on the success of the plaintiff's state law claim that its prior assignment of the patents was void. We concluded that the district court did not have jurisdiction over the infringement claim because:

> Until ownership is restored in the assignor, there can be no act of infringement by the assignee. Federal question jurisdiction must exist at the time the complaint is filed for a federal court to exercise authority over the case, and without first receiving equitable relief that restores to the assignor title to the patent, any claim of ownership by the assignor will be unfounded. Further, because an action to rescind or cancel an assignment is a state-law based claim, absent diversity jurisdiction it is to a state court that plaintiffs must look in seeking a forfeiture of the license.

*Id.* at 1577 (citations omitted).

The district court here found that, by virtue of their action seeking to invalidate the assignment agreement, Inselberg and Interactive had conceded that Bisignano currently owns the patents in question. *District Court Opinion*, 2016 U.S. Dist. LEXIS 113563, at \*25–26. Inselberg and Interactive understood that they could not invoke the federal court's patent jurisdiction without first obtaining relief in state court. *Id.* at \*26. The district court pointed out that, if Inselberg eventually wins a state

court action, he "might pursue patent law claims" at that time. *Id.* at \*25–26. But the court found that "such a contingent patent claim" would not give rise to federal jurisdiction now. *Id.* at \*26.

The district court explained that only "a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit." *Id.* (quoting *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)). Because the parties agreed that Bisignano remained the owner of the patent portfolio unless and until a state court invalidated the assignment agreement, the federal court did not have jurisdiction to consider the matter. *Id.* at \*27–29.

Bisignano and First Data argued that the court did have the authority to act because Inselberg and Interactive had threatened an infringement action. *Id.* at \*30–31. The district court pointed out that, while such a threat is a necessary prerequisite to a valid declaratory judgment claim, it was not sufficient in this case because a court can only consider "concrete controversies, not threats and perceptions." *Id.* at \*31. A district court has to look at "the nature of the action that the declaratory judgment defendant . . . *could have brought* in the absence of a declaratory judgment." *Id.* (quoting *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014)). The district court concluded that "[i]t would be a mistake[] . . . to rely too heavily on anticipated claims, when the threatened lawsuit has materialized and does not in fact include those claims. But it is not just that Inselberg and Interactive *did not* file patent claims; they admit that they *could not*." *Id.* On this basis, the court dismissed the federal claims and remanded the state law claims to state court.

First Data and Bisignano appealed the district court's orders to this court.

## II. Discussion

### 1. Standard of Review

This court reviews *de novo* a district court's order dismissing claims for lack of subject matter jurisdiction. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2011). The party claiming declaratory judgment jurisdiction has the burden to establish that jurisdiction existed at the time the claim was filed. *Id.*

This court applies the law of the regional circuit when reviewing a district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). The Third Circuit reviews *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

When 28 U.S.C. § 1447(d) "facially controls" a remand order, this court is precluded from reviewing the district court's determination regarding subject matter jurisdiction "no matter how plain the legal error in ordering the remand." *Preston v. Nagel*, 857 F.3d 1382, 1384 (Fed. Cir. 2017) (quoting *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)). This court reviews a district court's decision to remand claims under 28 U.S.C. §§ 1367(c) and 1454(d) for abuse of discretion. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009).

### 2. Jurisdiction Over the Counterclaims and the Declaratory Judgment Claims

First Data and Bisignano argue that the district court erred in dismissing First Data's counterclaims and declaratory judgment claims because, they assert, owner-

ship is a merits question the court should consider when addressing invalidity and noninfringement claims, rather than a jurisdictional prerequisite for a claim. First Data and Bisignano support their argument by citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), in which the Supreme Court addressed the distinction between merits issues and jurisdictional issues when considering statutory prerequisites to recovery on federal causes of action. According to First Data and Bisignano, the district court erred because it treated ownership as a jurisdictional question rather than a merits question. First Data and Bisignano also argue that our decision in *Jim Arnold*, on which the district court based its decision, conflicts with the Supreme Court's decisions in *Arbaugh* and *Reed Elsevier* and "should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." Appellants' Br. 22–23 (quoting *Arbaugh*, 546 U.S. at 511).

First Data and Bisignano are correct that in recent years the Supreme Court has clarified the difference between merits issues and jurisdictional issues arising from federal statutory requirements. For example, in *Arbaugh*, the Court explained that courts should determine whether Congress "clearly states" that a threshold limitation on a statute's scope is jurisdictional; if Congress does not frame a statutory limitation as jurisdictional, "courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 515–16. But the Supreme Court also acknowledged an exception: if a claim invoking federal question jurisdiction under 28 U.S.C. § 1331 is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous," then the court can dismiss the claim for lack of jurisdiction. *Id.* at 513 n.10 (internal quotation marks omitted). This exception was carried over from earlier Supreme Court cases, such as *Bell v.*

*Hood*, 327 U.S. 678 (1946). There, the Court explained that the failure to state a proper cause of action requires a judgment on the merits rather than a dismissal for jurisdiction, but that "previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83; *see also The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("No doubt if it should appear that the plaintiff was not really relying upon the patent law for his alleged rights, or if the claim of right were frivolous, the case might be dismissed.").

*Jim Arnold* is not to the contrary. Indeed, our decision in *Jim Arnold* seems to fit squarely within the exceptions reaffirmed by the Supreme Court in *Arbaugh*:

> To invoke the jurisdiction of a federal court under § 1338, it is necessary that plaintiff allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised. Furthermore, this allegation of ownership *must have a plausible foundation. Federal jurisdiction cannot lie based on allegations that are frivolous or insubstantial.* Thus, if plaintiff cannot in good faith allege such facts because, absent judicial intervention to change the situation, under the terms of a contract or deed of assignment the rights at issue are held by the defendant, federal court is not the place to seek that initial judicial intervention.

*Jim Arnold*, 109 F.3d at 1571–72 (emphasis added) (citations omitted). We also noted that "the complaint leaves no doubt that plaintiff's suit is premised on a state-law based set of claims arising out of an alleged breach of an assignment and royalty agreement." *Id.* at 1574. We

concluded that the court did not have federal jurisdiction over the case because the plaintiff's assertion that the assignment agreement was null and void "fails to present a nonfrivolous allegation of ownership of the patents," and "[f]ederal subject matter jurisdiction cannot attach based on frivolous allegations." *Id.* at 1577. The court's reasoning and conclusion align with the exceptions addressed by *Arbaugh* and *Bell*.

Because our reasoning and conclusion in *Jim Arnold* fit within the Supreme Court's acknowledged exception regarding federal claims that are not colorable, we see no reason to question the continuing vitality of the holding in *Jim Arnold*. We note, however, that the holding in *Jim Arnold* is limited to cases, like this one, where the former owner of a patent has assigned away his interest to another party and therefore cannot bring suit under the patent. In *Jim Arnold*, we explained that we were only addressing assignment agreements, which "pass title to the patentee's rights, with all the accompanying rights of ownership, from the patentee to the assignee." *Id.* In such a situation, "an assignor suing for infringement must first affirmatively seek equitable relief from a court to rescind or cancel the assignment" because, "without first receiving equitable relief that restores to the assignor title to the patent, any claim of ownership by the assignor will be unfounded." *Id.*

First Data and Bisignano attack the district court's reliance on *Jim Arnold* by pointing to a sentence in that opinion where we explained that the reasoning employed would not apply to cases in which "the assignment may be declared null and void by operation of law—either through a forfeiture provision present in the agreement or under a provision of applicable state law." *Id.* According to First Data and Bisignano, this sentence means that *Jim Arnold* does not control the result here because Inselberg and Interactive have asserted that the assignment is void under state law. But First Data's and Bisi-

gnano's reading of this single sentence would mean that we created an exception in *Jim Arnold* that swallows its own rule. Indeed, the unique situation we were addressing in *Jim Arnold* would only arise when an assignor attempts to have an assignment agreement rescinded or declared invalid.

First Data's and Bisignano's argument ignores the actual context we addressed in *Jim Arnold*. The assignor in *Jim Arnold* stated in its complaint that the assignment was "null and void" and that the assignee was infringing the patent. But we did not include this allegation as an example by which an assignment would be declared null and void "by operation of law." *See id.* at 1576–77. To the contrary, we explained that the gravamen of the complaint was founded in state contract law. Similarly, here, the claims focus on state law contract remedies, and Inselberg and Interactive admit that they cannot pursue a patent claim unless a state court grants rescission of the assignment agreement. *See, e.g.*, Appellees' Br. 2 ("Eric Inselberg and Inselberg Interactive, LLC do not own any patents. They used to own 21 patents, and they have filed state-law claims to try to get those patents back. *But* at the time the cases below were filed, they owned zero (0) patents."); *id.* at 3 ("Inselberg and his company lack title to the patents, and thus lack standing to bring a patent claim."); Oral Arg. at 13:59–14:05, http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2016-2677.mp3 (explaining that there is no threat of an infringement claim by Inselberg against First Data because Inselberg has "no present ownership of any patents").

First Data's and Bisignano's remaining arguments to the contrary ignore the admissions by Inselberg and Interactive that they do not hold any title to the patents at this time and will not hold title to the patents unless and until a court determines that the assignment agreement is invalid.

Even if we thought the reasoning in *Jim Arnold* did not survive the Supreme Court's subsequent decision in *Arbaugh*, First Data and Bisignano would face other jurisdictional hurdles. For example, the exception in *Arbaugh* and *Bell* for frivolous claims would remain. Even if *Jim Arnold* were no longer binding, First Data's claims seeking declaratory judgment of noninfringement would be frivolous because Inselberg and Interactive do not own any patents for which First Data could seek such judgment.

First Data and Bisignano also would have to establish that they have standing and that their claim is ripe for adjudication. The relatively unique facts of this case show that, at the very least, the counterclaims and the declaratory judgment claims are not ripe at this time. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Because all parties agree that Inselberg and Interactive do not currently have an ownership interest in the patents at issue and cannot obtain such an ownership interest absent relief from a court, any potential infringement claim by Inselberg and Interactive in this case relies on the "contingent future event[]" of recovering title to the patents by having a court invalidate the assignment agreement and order that the patents be returned to Inselberg and Interactive. If Inselberg and Interactive are successful in recovering the patents, then First Data's and Bisignano's claims would no longer be contingent on a future event that "may not occur at all." *Id.* Until that

time, however, an infringement dispute between these parties is not ripe.[1]

### 3. Remand of the State Law Claims

First Data and Bisignano also challenge the district court's remand of the state law claims to state court. Whether we can review the district court's remand of the state law claims depends on whether the district court remanded the claims under 28 U.S.C. § 1447. If it did, the order remanding the case "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). If the district court remanded the case after declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), however, then "the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)." *Carlsbad Tech.*, 556 U.S. at 641.

First Data and Bisignano argue that the district court remanded the state law claims to state court because it declined to exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(c). First Data and Bisignano point to a footnote in which the district court mentions supplemental jurisdiction and cites § 1367(c). But the district court's analysis throughout its opinion is based on a lack of subject matter jurisdiction. The district court's opinion also concludes by stating that it grants the motion "to remand the case under 28 U.S.C. § 1447(c)," *District Court Opinion*, 2016 U.S. Dist. LEXIS 113563, at *33, and the district court's order explains that it was

---

[1] It is also unclear that First Data and Bisignano could establish that there is an actual, imminent threat of an infringement claim that could give rise to a declaratory judgment action. Because the district court declined to address the issue, *see District Court Opinion*, 2016 U.S. Dist. LEXIS 113563, at *28 n.10, we do not do so either.

granting the motion "to remand this action to state court, pursuant to 28 U.S.C. § 1447(c)," J.A. 1–2.

We conclude that the district court's decision was based on a lack of subject matter jurisdiction, and that the district court remanded the case to state court under 28 U.S.C. § 1447(c). Section 1447(d) therefore precludes us from reviewing the district court's remand order. *See* 28 U.S.C. § 1447(d); *see also Preston*, 857 F.3d at 1384 (explaining that, because § 1447(d) controlled, the court was precluded from reviewing the district court's decision ordering remand).

## III. CONCLUSION

We have considered First Data's and Bisignano's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the district court's judgment.

## AFFIRMED